UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| PLANNED PARENTHOOD SOUTH ATLANTIC and JULIE EDWARDS, on her behalf and on behalf of all others similarly situated, | } } } } } | |
| Plaintiffs, | } } | Case No.: 2:18-cv-2078-BHH |
| vs | } } | COMPLAINT |
| JOSHUA BAKER, in his official capacity as Director, South Carolina Department of Health and Human Services, | } } } } | |
| Defendant. | } | |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF—CLASS ACTION**

Plaintiffs, by and through their attorneys, and on behalf of all members of the class, bring this Complaint against the above-named Defendant and his employees, agents, delegates, and successors in office, in his official capacity, and in support thereof state the following:

**INTRODUCTORY STATEMENT**

1. This civil action is brought pursuant to 42 U.S.C. § 1983 to vindicate rights secured by the federal Medicaid statutes, as well as the U.S. Constitution.

2. Plaintiff Planned Parenthood South Atlantic ("PPSAT") provides critically needed family planning and preventive health services to thousands of women, men, and young adults each year in underserved areas of South Carolina. South Carolina does not pay for abortions except in extremely narrow circumstances, and reimbursement for Medicaid services is not at issue in this case.

3. As is required by federal law, patients insured through Medicaid, such as Plaintiff Julie Edwards, may seek family planning and other preventive health services from any willing provider who is qualified to provide the services in question and have those services covered by Medicaid.

4. This action challenges the unlawful and politically motivated decision by the South Carolina Department of Health and Human Services (DHHS), at the direction of Governor McMaster, to terminate PPSAT's status as a qualified Medicaid provider solely on the basis that PPSAT provides safe, legal abortion *outside* the Medicaid program. Indeed, Governor McMaster has proudly stated that his efforts to exclude PPSAT from Medicaid are for the *purpose* of forcing PPSAT to cease providing abortion. Tim Smith, *Gov. Henry McMaster Says He Would Reject $34 Million in Federal Aid to Stop Abortion*, Greenville News, May 29, 2018, https://www.greenvilleonline.com/story/news/local/south-carolina/2018/05/29/gov-henry-mcmaster-says-he-would-reject-federal-aid-stop-abortion/651245002/ (quoting the Governor, "I'll continue to be a threat until they are gone"). And DHHS has expressed its position that the Executive Order "result[s] in abortion clinics no longer being qualified to provide family planning services to South Carolina Medicaid beneficiaries." Lauren Sausser, *McMaster Reverses Family Planning Cuts, Orders Medicaid to Drop Abortion Clinics*, Post & Courier (Charleston, S.C.), July 11, 2018, https://www.postandcourier.com/health/mcmaster-reverses-family-planning-cuts-orders-medicaid-to-drop-abortion/article_d27852e0-86b6-11e8-92f4-bba0480f4c5b.html.

5. Under clear judicial precedent, DHHS's efforts are unlawful under both the Medicaid Act and the United States Constitution.

6. Defendant's actions violate 42 U.S.C. § 1396a(a)(23) ("Medicaid freedom of choice provision") because, by barring PPSAT from the Medicaid program, Defendant prevents

their patients, including Plaintiff Julie Edwards, from receiving services from their qualified, willing provider of choice.

7. Defendant's actions further impermissibly treat PPSAT, its staff, and its patients differently than other Medicaid providers and their patients, and penalize PPSAT for the provision of constitutionally-protected abortion services without adequate justification, in violation of the Fourteenth Amendment.

8. Unless Defendant is enjoined from enforcing his termination letter, PPSAT's patients, including Plaintiff Julie Edwards, will lose their provider of choice, will find their family planning services interrupted, and in many cases will be left with reduced access to care.

9. Plaintiffs seek declaratory and injunctive relief to protect patients' access to—and PPSAT's ability to provide—these critical medical services.

## JURISDICTION AND VENUE

10. Subject-matter jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343.

11. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

12. Venue in this judicial district is proper under 28 U.S.C. § 1391.

## THE PARTIES

**I. Plaintiffs**

  **A. PPSAT**

13. For four decades, PPSAT (and its predecessor organizations) has been a trusted Medicaid provider for thousands of South Carolinians. PPSAT sues on behalf of itself and its patients.

14. PPSAT offers patients, including those insured through the Medicaid program, a range of family planning and other reproductive health services and other preventive care at two health centers in South Carolina: in Charleston and Columbia. This care includes well-woman exams; contraception (including long-acting reversible contraception or "LARC") and contraceptive counseling; hormonal counseling; screening for breast cancer; screening and treatment for cervical cancer; screening and treatment for sexually transmitted infections ("STIs"), including human papillomavirus ("HPV") vaccines; pregnancy testing and counseling; physical exams; and screening for conditions such as diabetes, depression, anemia, cholesterol, thyroid disorders and high blood pressure. Although PPSAT offers abortion services at a limited number of health centers, South Carolina Medicaid does not cover abortions except in rare circumstances where required by federal law.

### B. Patient Plaintiff

15. Plaintiff Julie Edwards, a South Carolina resident and Medicaid patient, obtains reproductive health care from PPSAT and desires to continue to do so. She sues on behalf of herself and as a representative of a class of South Carolina Medicaid beneficiaries who obtain, or who seek to obtain, covered health care services from PPSAT.

## II. Defendant

16. Joshua Baker, M.D., is Director of DHHS, which is the state agency that administers South Carolina's Medicaid program, and has issued a termination notice to PPSAT. Defendant Baker is sued in his official capacity, as are his employees, agents, and successors in office.

**THE MEDICAID PROGRAM**

**III.    The Medicaid Statute**

17.    The Medicaid program, established under Title XIX of the Social Security Act of 1935, 42 U.S.C. § 1396 *et seq.*, pays for medical care for eligible needy people. A state may elect whether or not to participate; if it chooses to do so, it must comply with the requirements imposed by the Medicaid statute and by the Secretary of the U.S. Department of Health and Human Services ("HHS") in her administration of Medicaid. *See generally* 42 U.S.C. § 1396a(a)(1)–(83).

18.    To receive federal funding, a participating state must develop a "plan for medical assistance" and submit it to the Secretary of HHS for approval. 42 U.S.C. § 1396a(a). As part of its plan, a state may contract with health plans, or Managed Care Organizations ("MCOs"), to coordinate health care for its Medicaid beneficiaries, subject to requirements set by federal law. 42 U.S.C. § 1396b(m).

19.    Among other requirements, the State plan must provide that: "[A]ny individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services . . . ." 42 U.S.C. § 1396a(a)(23)(A).

20.    Congress has singled out family planning services for special additional protections to ensure freedom of choice, specifically providing that, with respect to these services and with certain limited exceptions not applicable here, "enrollment of an individual eligible for medical assistance in a primary care case-management system . . . , a medicaid managed care organization, or a similar entity shall not restrict the choice of the qualified person from whom the individual may receive services . . . ." 42 U.S.C. § 1396a(a)(23)(B); see also 42 C.F.R. § 431.51(b)(2) (implementing requirement).

21. The federal government reimburses the state of South Carolina 90% of expenditures attributable to offering, arranging, and furnishing family planning services and supplies in Medicaid. 42 U.S.C. § 1396b(a)(5).

22. Although states are prohibited from using federal funds to reimburse providers for abortion generally, they are required to reimburse for abortions in cases of rape, incest, or life-threatening medical situations. *See* Pub. L. No. 115-141, div. H, tit. V, § 506–507 (2018) (Hyde Amendment, limiting federal funding for abortion to these circumstances); Letter from Sally K. Richardson, Dir., Ctr. for Medicaid & State Operations, to State Medicaid Dirs. (Feb. 12, 1998), https://www.medicaid.gov/Federal-Policy-Guidance/downloads/smd021298.pdf (reaffirming that "all abortions covered by the Hyde Amendment, including those abortions related to rape or incest, are medically necessary services and are required to be provided by states participating in the Medicaid program").

## EFFORTS TO EXCLUDE PPSAT FROM MEDICAID

23. Since taking office in 2017, Governor McMaster has vowed to exclude PPSAT and other abortion providers from all publicly-subsidized health care networks in an effort to eliminate access to safe and legal abortion in South Carolina. Smith, *supra* (quoting the Governor condemning Planned Parenthood for performing abortions and vowing to "continue to be a threat until they are gone").

24. On August 24, 2017, the Governor directed DHHS

> to take any and all necessary actions, as detailed herein and to the extent permitted to law, to cease providing State or local funds, whether via grant, contract, state-administered federal funds, or any other form, to any physician or professional medical practice affiliated with an abortion clinic and operating concurrently with and in the same physical, geographic location or footprint as an abortion clinic.

6

S.C. Exec. Order No. 2017-15 (Aug. 24, 2017), attached to Decl. of Jenny Black in Supp. of Pls.' Mot. for TRO & Prelim. Inj. (hereinafter "Black Decl.") as Exhibit A. On July 5, 2018, "to prevent taxpayer dollars from directly or indirectly subsidizing abortion providers like Planned Parenthood," the Governor vetoed over fifteen million dollars in family planning funds, none of it directed to abortion. Letter from Henry McMaster, Governor, State of S.C., to S.C. General Assembly (July 5, 2018), attached to Black Decl. as Exhibit B.

25.     A week later, on July 13, he issued Executive Order 2018-21, which directed DHHS to divert other funds to continue the Family Planning program whose funding he had just cut. In this same order, the Governor also directed DHHS to "deem" abortion clinics and any affiliated physicians "unqualified," and to "immediately terminate them upon due notice and deny any future such provider enrollment applications for the same." S.C. Exec. Order No. 2018-21 (July 13, 2018), attached to Black Decl. as Exhibit C.

26.     On that same day, DHSS notified PPSAT that "[t]he Governor's actions result in Planned Parenthood no longer being qualified to provide services to Medicaid beneficiaries" and that it was terminating PPSAT *effective immediately*. Termination Letter from Amanda Q. Williams, Health Servs. Acting Program Dir., DHHS Divs. of Health Servs., Operations & Clinical Quality to PPSAT (July 13, 2018), attached to Black Decl. as Exhibit D. A department spokesperson also stated to media that the Governor's actions "result in abortion clinics no longer being qualified to provide family planning services to South Carolina Medicaid beneficiaries." *SC Gov to Medicaid: Cover Medical Care, Not Abortion Clinics*, Charlotte Observer, July 16, 2018, https://www.charlotteobserver.com/news/article214955445.html.

**THE IMPACT OF DEFENDANT'S ACTIONS ON PPSAT AND ITS PATIENTS**

27.     Because of DHSS's actions in terminating it from Medicaid, effective immediately, because it provides lawful and constitutionally-protected abortion services, PPSAT has been forced

7

to stop providing basic and preventative health care services to the over three hundred Medicaid beneficiaries who rely on it each year for family planning and other preventive care, and has been forced to instead turn these patients away to attempt to seek services at other Medicaid providers. Every day that this continues, both PPSAT and its patients are irreparably harmed.

28. To be eligible for Medicaid-covered family planning services, an individual must make under $24,000 a year if living alone or $32,000 a year if supporting a dependant. DHHS, Medicaid Eligibility Guidelines (2014), https://www.scdhhs.gov/income-limits. For non-family planning services, she must meet even stricter requirements. *Id*. These restrictions are among the tightest in the country. Liv Osby, *Could Health Care Bill Set Stage for 'Medicaid Hunger Games' in SC? A New Report Thinks So*, The State (Charleston, S.C.), June 26, 2017, https://www.thestate.com/living/health-fitness/article158231384.html.

29. South Carolina also has a relatively large Medicaid patient population, as well as a relatively low rate of spending per beneficiary. *Id*. Its population also has higher rates of key health problems, as compared to the national population. Kaiser Family Foundation, *Key Data on Health and Health Coverage in South Carolina* (2016), https://www.kff.org/disparities-policy/fact-sheet/key-data-on-health-and-health-coverage-in-south-carolina/. These factors make it all the more critical to public health for the state to maintain the fullest possible network of willing, qualified providers to ensure patients get the care they need.

30. The need for publicly supported family planning services, in particular, is great in South Carolina. In 2010, 50% of pregnancies in South Carolina were unintended. Guttmacher Institute, *State Facts About Unintended Pregnancy: South Carolina* (2014), https://www.guttmacher.org/fact-sheet/state-facts-about-unintended-pregnancy-south-

carolina#9a. South Carolina's unintended pregnancy rate in 2010 was forty-six per 1,000 women aged fifteen to forty-four, and forty-eight per 1,000 women aged fifteen to nineteen in 2013.

31.   Moreover, South Carolina faces high, and rising, rates, particularly among teenagers, for various STIs including syphilis and HIV/AIDS. Maayan Schechter, *Sexually Transmitted Diseases Up in SC. Agency Wants Almost $1 Million to Cut Cases*, The State (Charleston, S.C.), Jan. 26, 2018, https://www.thestate.com/news/politics-government/politics-columns-blogs/the-buzz/article196625184.html; Mary Katherine Wildeman, *Syphilis 'Not a Disease of the Past': STD Has Been on the Rise in South Carolina for Years*, Post & Courier (Charleston, S.C.), June 11, 2017, https://www.postandcourier.com/features/syphilis-not-a-disease-of-the-past-std-has-been/article_df3f0f42-3be8-11e7-a341-1b6b37fbe274.html; Ariel Gilreath, *South Carolina Ranks Among Top STD Rates in Nation*, Index-Journal (Greenwood, S.C.), Apr. 18, 2017, http://www.indexjournal.com/news/south-carolina-ranks-among-top-std-rates-in-nation/article_e8e014db-2c8b-5b7c-91bf-6482535ffad0.html; Zach Fox, *Rise in Teen STD Rate in S.C. Concerns Health Experts,* GoUpstate.com (Spartanburg, S.C.), Feb. 11, 2017, http://www.goupstate.com/news/20170211/rise-in-teen-std-rate-in-sc-concerns-health-experts.

32.   PPSAT helps meet the need in South Carolina for publicly supported family planning and other health services. Both of PPSAT's health centers in South Carolina are located in high-population areas with formally-recognized provider shortages. Thirty percent of the population of South Carolina lives in U.S. Department of Health and Human Services-designated Primary Care Health Professional Shortage Areas (HPSAs)—areas in which primary care professionals are practically inaccessible. Robin Rudowitz, et al., Kaiser Family Foundation, *Factors Affecting States' Ability to Respond to Federal Medicaid Cuts and Caps: Which States Are Most At Risk?* (2017), https://www.kff.org/medicaid/issue-brief/factors-affecting-states-

9

ability-to-respond-to-federal-medicaid-cuts-and-caps-which-states-are-most-at-risk/. Both the Columbia health center and the Charleston health center provide care in population-based HPSAs. The low-income populations of both Richland County (where the Columbia health center is located) and Charleston County (where the Charleston health center is located) are designated as HPSA population groups, indicating a shortage of providers specifically for that population. Health Res. & Servs. Admin., Health Professional Shortage Area (HPSA) HPSA Detail—Primary Care, https://ersrs.hrsa.gov/ReportServer?/HGDW_Reports/BCD_HPSA/BCD_HPSA_H1_Detail_Quick_Access_HTML&rc:Toolbar=false (last visited July 18, 2018).

33. Even if other providers were available, patients insured through Medicaid choose to receive their reproductive health care from PPSAT based on a number of factors that are generally not available at other providers. With its evidence-based practices and up-to-date technology, PPSAT is known as a provider of high-quality medical care. Many patients also turn to PPSAT for their reproductive health care because they are concerned about their privacy and fear being judged by other providers. *See* Schechter, *supra* (acting Health and Environmental Control director Dave Wilson noting that patients often avoid seeking STD-related care from their primary care provider).

34. In addition, many low-income patients have unique scheduling constraints because they are juggling inflexible work schedules, childcare obligations, transportation challenges, and lack of childcare resources. To ensure that these patients have access to family planning services, PPSAT offers extended hours and walk-in and same-day appointments, as well as same-day birth control shots, birth control implants, and intrauterine devices, so that patients only need to make one trip to a health center to obtain their contraceptive method of choice. PPSAT also makes interpreting services available to non-English speaking patients at all times.

35. Defendant's actions will deprive PPSAT's Medicaid patients, including Ms. Edwards, of access to PPSAT's high-quality, specialized care.

36. PPSAT's patients insured through Medicaid, including Ms. Edwards, rely on PPSAT as the provider they can turn to for critical medical care and for prompt, efficient, and compassionate services. If PPSAT is eliminated from Medicaid, these patients will be prevented from receiving services from their provider of choice, will have their health care interrupted, and may encounter difficulties finding alternative care.

37. Without Medicaid reimbursements, and without other financial support to fill that gap, PPSAT may not be able to keep providing services in the same manner it has been and may need to reduce health center hours. Such changes would affect not only its Medicaid patients but all of its patients, many of whom rely on its after-hours availability.

38. In addition, turning away patients insured through the Medicaid program fundamentally defeats the core of PPSAT's mission: to provide care for underserved women and men who need its help staying healthy and planning their families and future.

39. Defendant's stated positions also violate his obligations under the Medicaid Act to cover medically necessary abortions (i.e., in case of rape, incest, or life-threatening medical emergencies), thereby endangering Medicaid enrollees in these situations.

40. Plaintiffs have no adequate remedy at law.

## CLASS ALLEGATIONS

41. This lawsuit is properly maintained as a class action under Federal Rules of Civil Procedure 23(b)(1)(B) and (b)(2).

42. The class consists of all South Carolina Medicaid beneficiaries who obtain, or who seek to obtain, covered health care services from PPSAT.

43. Although the precise size of the class is unknowable, as alleged in Paragraphs 1–42 above, PPSAT provides health care services to over three hundred South Carolina Medicaid patients annually. Therefore, the approximate size of the class is over three hundred individuals.

44. Ms. Edwards is an adequate class representative because she, like other members of the class, is a South Carolina resident and Medicaid patient who obtains her reproductive health care from PPSAT and desires to continue to do so. Unless Defendant is enjoined, Ms. Edwards and the other class members will suffer the same injury and resulting harm: they will be unable to obtain health care services at the provider of their choice. As a result, many of PPSAT's Medicaid patients, including Ms. Edwards and other class members, who already have few or no alternative options, will find it difficult or impossible to access the high-quality reproductive and other health care services they need.

45. Defendant's actions—terminating PPSAT from the South Carolina Medicaid program—applies generally to the class, such that both declaratory and injunctive relief is appropriate for all members of the class.

46. Class members raise the same questions of law, including whether Defendant's termination of PPSAT from South Carolina's Medicaid violates the Medicaid freedom-of-choice provision, 42 U.S.C. § 1396a(a)(23), and the Fourteenth Amendment of the United States constitution, such that, as a practical matter, adjudication of their claims would be dispositive of the interests of the other class members.

## CLAIMS FOR RELIEF

### CLAIM I—MEDICAID ACT (TITLE XIX OF SOCIAL SECURITY ACT)

47. Plaintiffs hereby incorporate Paragraphs 1 through 46 above.

48. Defendant's actions violate Section 1396a(a)(23) of Title 42 of the United States Code by denying PPSAT's patients, including Ms. Edwards, the right to choose any willing, qualified health care provider in the Medicaid program.

### CLAIM II—FOURTEENTH AMENDMENT EQUAL PROTECTION

49. Plaintiffs hereby incorporate Paragraphs 1 through 46 above.

50. Defendant's actions violate the rights of PPSAT, its staff, and its patients (including Ms. Edwards) by singling them out for unfavorable treatment without adequate justification.

### CLAIM III—FOURTEENTH AMENDMENT PENALIZING CONSTITUTIONALLY PROTECTED ACTIVITY

51. Plaintiffs hereby incorporate Paragraphs 1 through 46 above.

52. Defendant's action penalizes PPSAT for its constitutionally protected activity, without adequate justification.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court:

53. Order that this action be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1)(B) and/or 23(b)(2);

54. Issue a declaratory judgment that Defendant's actions violate the Medicaid Act;

55. Issue a declaratory judgment that Defendant's actions violate the Fourteenth Amendment;

56. Issue temporary, preliminary, and permanent injunctive relief, without bond, enjoining Defendant and his agents, employees, appointees, delegates, or successors from terminating, or threatening to terminate PPSAT from South Carolina Medicaid;

57. Grant Plaintiffs' attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and,

58. Grant such further relief as this Court deems just and proper.

Dated: July 27, 2018

                                               Respectfully Submitted:

/s/ Malissa Burnette
M. Malissa Burnette (Fed. Bar. No. 1616)
Kathleen McDaniel (Fed. Bar. No. 10139)
Burnette Shutt & McDaniel, PA
912 Lady Street, Second Floor
Columbia, SC 29201
803-904-7913
mburnette@burnetteshutt.law
kmcdaniel@burnetteshutt.law

Jennifer Sandman*
Planned Parenthood Federation of America
123 William St., 9th Floor
New York, NY 10038
(212) 261-4584
jennifer.sandman@ppfa.org

Alice Clapman*
Planned Parenthood Federation of America
1110 Vermont Ave., NW, Suite 300
Washington, DC 20005
(202) 973-4862
alice.clapman@ppfa.org

Attorneys for the Plaintiffs

*Pro hac vice motions to be filed*