UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD SOUTH ATLANTIC and JULIE EDWARDS, on Her behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSHUA BAKER, in his official capacity As Director, South Carolina Department of Health and Human Services,<br><br>Defendant. | Civil Action No: 2:18-cv-2078-BHH |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendant, by and through his undersigned counsel, submits this Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

**NATURE OF THE CASE**

Plaintiffs Planned Parenthood South Atlantic (PPSAT) and Julie Edwards, who brings this action on her own behalf and that of a purported class, brought this action pursuant to 42 U.S.C. § 1983 seeking to secure rights allegedly bestowed on the Plaintiffs by the Medicaid Act (Title XIX of the Social Security Act) and the Fourteenth Amendment of the United States Constitution. Plaintiffs seek injunctive relief and a declaratory judgment that Defendant has violated the Medicaid Act and the Fourteenth Amendment by terminating PPSAT's enrollment with the South Carolina Department of Health and Human Services as a Medicaid provider following the directive in Governor McMaster's Executive Order 2018-21 that abortion clinics and affiliated physicians are deemed unqualified to participate in the South Carolina Medicaid program. Complaint ¶¶ 1,

1

25, 47-58. Plaintiffs claim that PPSAT, and the patients served by its clinics and pharmacies, have been irreparably harmed by the exclusion of PPSAT from the Medicaid program and seek a temporary restraining order and preliminary injunction ordering Defendant to allow PPSAT to enroll as a Medicaid provider during the pendency of this suit.

## STATEMENT OF FACTS

Defendant Joshua Baker is the Director of SCDHHS. SCDHHS is the single state agency responsible for the administration in South Carolina of a program of Medical Assistance under Title XIX of the Social Security Act; it makes all final decisions and determinations regarding the administration of the Medicaid program. PPSAT operates health centers in Columbia and Charleston, South Carolina that provide physician services, including abortions, and a pharmacy. Effective June 15, 2015, PPSAT entered into two enrollment agreements with SCDHHS to provide pharmacy and physician services. Exhibit 1, June 15, 2015 PPSAT Pharmacy Enrollment Form and Participation Agreement; Exhibit 2, June 15, 2015 PPSAT Physician Group Enrollment Form and Participation Agreement. As PPSAT participation in the Medicaid program was predicated on its enrollment agreements with SCDHHS, PPSAT's claims all arise under the terms of the Medicaid enrollment agreements. These enrollment agreements remained in effect until July 13, 2018 when SCDHHS terminated PPSAT's enrollment agreements with the South Carolina Medicaid Program. Exhibit 3, July 13, 2018 Letter from Amanda Q. Williams to PPSAT.

On July 13, 2018, Governor Henry McMaster issued Executive order 2018-21 which, in part, directed SCDHHS

> to deem abortion clinics, as defined by Section 44-41-75 of the South Carolina Code of Laws, as amended, and any affiliated physicians or professional medical practices, as identified and defined in Executive Order 2017-15, that are enrolled in the Medicaid program as unqualified to provide family planning services and, therefore, to immediately terminate them upon due notice and deny any future such provider enrollment applications for the same.

Because Executive Order 2018-21 had the effect of deeming PPSAT immediately unqualified to be enrolled in the Medicaid Program, SCDHHS notified PPSAT that same day that SCDHHS was immediately terminating PPSAT's enrollment agreements with SCDHHS. Notably, this termination was based on PPSAT being deemed unqualified by virtue of Executive Order 2018-21 rather than a termination for cause by SCDHHS.

South Carolina, like all states, is authorized by Congress and promulgated by the U.S. Secretary of Health and Human Services, to establish appeal procedures for Medicaid providers. 42 U.S.C. §§ 1396a(a)(4), (39); 42 C.F.R. § 1002.213. South Carolina's appeal procedures are codified in Sections 126-150 through 126-158 of the South Carolina Code of Regulations. Accordingly, and as set out in PPSAT's enrollment agreements with SCDHHS, a provider who is terminated has a right to file an administrative appeal within thirty days of the termination and then to seek judicial review. Exhibits 1 and 2. PPSAT, however, declined to exercise its appeal rights under South Carolina law or its enrollment agreements and instead identified a patient, Edwards, who was willing to join the organization in this lawsuit, and brought this action in federal court.

On July 27, 2018, PPSAT and its patient Edwards brought this action against Defendant, seeking, in addition to claims for declaratory judgment, a temporary restraining order and a preliminary injunction to prevent the Department from terminating PPSAT's contract. Plaintiffs alleged that they are likely to prevail on a claim that SCDHHS, by excluding PPSAT from the Medicaid program without notice or a finding of cause, had violated § 23(A) of the Medicaid Act, also described as the Medicaid "free choice of provider" provision. 42 U.S.C. § 1396a(a)(23). Plaintiffs assert that as a result of SCDHHS's termination of PPSAT's enrollment agreements with the South Carolina Medicaid Program, they are suffering, and without an injunction, will continue

to suffer irreparable harm. However, Plaintiffs' claim that § 23(A) creates a judicially enforceable right, violations of which can be remedied through an action under 42 U.S.C. § 1983, is erroneous, and, therefore, Plaintiffs' arguments for irreparable harm and balancing the equities weigh toward Defendant and granting an injunction would be adverse to the public's interest. Accordingly, Plaintiffs' motion for temporary restraining order and preliminary injunction should be denied.

## ARGUMENT

Plaintiffs have failed to make the requisite showing required for a temporary restraining order or preliminary injunction. Motions for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). The court's authority to issue preliminary injunctions arises from Fed. R. Civ. P. 65, which grants the court discretion. However, "[p]reliminary injunctions are not to be granted automatically." *Wetzel v. Edwards, 635 F.2d 283*, 286 (4th Cir. 1980) (citing *First Citizens Bank & Trust Co. v. Camp*, 432 F.2d 481, 483 (4th Cir. 1970)). Preliminary injunctions are "extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *Tucker v. Helbig*, No. 8:13-cv-0401, 2013 WL 1181512, at 1 (D.S.C. March 21, 2013) (citing *MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). It is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Green*, 553 U.S. 674, 689-90 (2008)).

A plaintiff seeking a preliminary injunction must establish all four of the following elements: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in

the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Winter*, 555 U.S. 7, 20 (2008); *Dewhurst v. Century Aluminum Co.,* 649 F.3d 287 (4th Cir., 2011); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009). Only after the plaintiff makes a clear showing that she is likely to succeed on the merits of her claim and that she is likely to be irreparably harmed absent injunctive relief may the court consider whether the balance of equities tips in her favor. *See Real Truth*, 575 F.3d at 346-47. Finally, if the plaintiff met the requisite showing that she prevails on the first three elements, the court must review the public consequences of employing the extraordinary relief of injunction. *Real Truth*, 575 F.3d at 347 (citing *Winter*, 555 U.S. at 24). The court may only exercise its discretion in granting a temporary restraining order or a preliminary injunction in accordance with the strict conditions set forth above. Fed. R. Civ. P. 65.

In this action, PPSAT and Edwards have failed to establish a likelihood of success on the merits, irreparable harm, a balance of the equities, or that the public interest lies with granting the requested relief, and therefore the motion must be denied.

**I.     Plaintiffs Have Not Demonstrated a Substantial Likelihood of Success on the Merits**

Despite Plaintiffs' claims to the contrary, the Medicaid Act, 42 U.S.C. § 1396a(a)(23), does not unambiguously create a federal right enforceable by providers and individual patients under 42 U.S.C. § 1983. Although Plaintiffs have brought claims pursuant to both 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution in this action, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction only seeks injunctive relief based on Plaintiffs' § 1983 claim. Plaintiffs allege that Defendant's termination of PPSAT from the Medicaid program as directed in Executive Order No. 2018-21 violates a federal right of patients, like Edwards, "to choose any willing, qualified health care provider in the Medicaid program".

Complaint ¶ 48. While there is a split among the circuits that have reviewed this issue because some courts have relied on outdated precedent, the right-of-action doctrine set out in *Gonzaga University v. Doe*, 536 U.S. 273 (2002), precludes Medicaid providers and patients from suing to enforce the provider-choice Medicaid plan requirement of 42 U.S.C. § 1396(a)(23). Accordingly, since the provisions of the Medicaid Act do not unambiguously create a federal right for providers and individual patients that can be enforced under § 1983, Plaintiffs do not have a likelihood of success on the merits of their claims and their motion for injunctive relief must be denied.

In this case, Plaintiffs focus on one specific requirement of state Medicaid plans, which is sometimes referred to as the "free choice of qualified provider" provision. As set out in 42 U.S.C. § 1396a(a)(23), state Medicaid plans "must provide that … any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required …, who undertakes to provide him such services …." Section 1396a(a)(23) does not define the term "qualified to perform the service or services provided." Instead, Medicaid regulations permit states to "establish reasonable standards relating to the qualifications of providers." 42 C.F.R. § 431.51(c)(2). Moreover, states are also entitled to exclude providers based on any reason that the Secretary is allowed to exclude providers under 42 U.S.C. §§ 1320a-7, 1320a-7a, or 1395cc(b)(2). 42 U.S.C. § 1396a(p)(1). This express provision of grounds for disqualification is "in addition to any other authority," which courts have concluded "permit[s] a state to exclude an entity from its Medicaid program for any reason established by state law." *First Med. Health Plan v. Vega-Ramos*, 479 F.3d 46, 53 (1st Cir. 2007). Here, South Carolina state law has clearly established that "State funds appropriated for family planning must not be used to pay for an abortion". S.C. Code Ann. § 43-5-1185.

Nonetheless, Plaintiffs read into 42 U.S.C. § 1396a(a)(23) a conferred individual right for Medicaid beneficiaries to have the provider of their choice be deemed qualified by the State. A plain reading of the statute reveals that such a right is—to say the least—not clear and unambiguous from the text. Plaintiffs' position becomes even less plausible when the provision is read in the context of the entire Medicaid Act, including the provisions of the Act (e.g., 42 U.S.C. § 1396a(p)(1) and the cross-referenced statutes) that expressly permit states to exclude providers from the Medicaid program for ethical, professional, and fiscal misconduct. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole….") (quotations and citations omitted). A more literal reading of § 1396a(a)(23) —which properly takes into account the exclusionary provisions in the Medicaid Act—supports the view that the statute presupposes a State plan will identify qualified providers and addresses a Medicaid patient's ability to freely choose among those providers deemed qualified by the State without the State or federal government requiring the patient see a particular qualified provider. Accordingly, if there is any individual federal right clearly and unambiguously conferred, it is only the right of a Medicaid patient to choose among the group of providers deemed qualified by the State, not the far broader right to have a particular provider deemed qualified. *See* Plaintiffs' Memorandum pp. 12-13.

The Medicaid Act is Spending Clause legislation. The Secretary is charged with ensuring that States substantially comply with plan requirements before approving federal matching grants. 42 U.S.C. § 1396c. If the Secretary finds that a State plan "has been so changed that it no longer

complies" with the requirements of Section 1396a or that "in the administration of the plan there is a failure to comply substantially with any such provision," then the Secretary "shall notify [the] State [] . . . that further payments will not be made to the State." *Id*. Payments will be discontinued "until the Secretary is satisfied that there will no longer be any such failure to comply." *Id*. The Secretary may, in her discretion, choose to "limit payments to categories under or parts of the State plan not affected by [the] failure [to comply]" instead of cutting off funding completely. *Id*. CMS's disapproval notwithstanding, a state may nonetheless carry out a noncompliant Medicaid plan. But CMS may then decide not to pay the state some or all of the federal matching funds payable with regard to a non-compliant plan. 42 U.S.C. § 1396c. Alternatively, the Secretary may waive compliance with requirements of the Medicaid Act. 42 U.S.C. § 1396n(b)(4).

The Supreme Court's more recent jurisprudence has acknowledged its evolution toward "reject[ing] attempts to infer enforceable rights from Spending Clause statutes." *Gonzaga University v. Doe*, 536 U.S. 273, 281 (2002). In their Memorandum in Support, Plaintiffs do not contest that the "Free Choice of Provider" provision at issue is a Spending Clause provision. Accordingly, they also do not contest that a private right of action under 42 U.S.C. § 1983 to enforce 42 U.S.C. § 1396a(a)(23) is only available if, and to the extent that, "Congress speaks with a clear voice and manifests an unambiguous intent to confer individual rights. . . ." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002). They also do not contest the clear conclusion if this proposition is carried forward—that any federal right enforced by § 1983 must be strictly limited to the right that Congress clearly and unambiguously intended to confer. No unambiguous right exists in this case. Instead, Plaintiffs rely on overbroad reading of § 1396a(a)(23) that was already rejected by the United States Supreme Court in *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 774 (1980),

8

to collaterally challenge a decision made by SCDHHS to terminate a provider from the Medicaid program once that provider was deemed "unqualified" by the Governor of South Carolina.

In *O'Bannon*, the Supreme Court was called on to interpret the "contours of the right conferred" by 42 U.S.C. § 1396a(a)(23) and the Court offered a targeted review of the substantive right that § 1396a(a)(23) confers on Medicaid beneficiaries. 447 U.S. at 786. As set forth in *O'Bannon*, § 1396a(a)(23) concerns Medicaid patients' freedom to choose among the pool of providers deemed qualified by the State, not the antecedent question whether a particular provider has been rightly included or excluded by the State from the pool of qualified providers. 447 U.S. at 785. Plaintiffs cite *O'Bannon* only for the proposition that § 1396a(a)(23) "confers an absolute right to be free from government interference with the choice to remain in a home that continues to be qualified", 447 U.S. at 785, while ignoring its authoritative interpretation of §1396a(a)(23): "But it clearly does not confer a right on a recipient to enter an unqualified home and demand a hearing to certify it, nor does it confer a right on a recipient to continue to receive benefits for care in a home that has been decertified. Second, although the regulations do protect patients by limiting the circumstances under which a home may transfer or discharge a Medicaid recipient, they do not purport to limit the Government's right to make a transfer necessary by decertifying a facility." *Id*.

In light of *O'Bannon*, it is simply impossible to conclude that Congress clearly and unambiguously provided the right that the Plaintiffs claim PPSAT's patients who participate in the South Carolina Medicaid program possess—the right to choose a provider that the State has terminated from the Medicaid program based on a decision that the provider is unqualified, and where the provider did not appeal the termination.

Plaintiffs do not address the application of O'Bannon's "contours of the right conferred" by 42 U.S.C. § 1396a(a)(23) in their Memorandum. Instead, Plaintiffs rely on cases from the Ninth, Seventh, Fifth and Sixth Circuits which all found a 42 U.S.C. § 1983 claim to lie for enforcement of 42 U.S.C. § 1396a(a)(23). However, these cases do not all address analogous questions. In the Ninth Circuit and Seventh Circuit cases, the right being enforced by § 1983 was the patient's right to freely choose among the pool of qualified providers; the States in those cases did not even suggest that the providers in question had committed misconduct excluding them from the pool of qualified providers. *See Planned Parenthood of Ariz., Inc. v. Betlach*, 727 F.3d 960, 973 (9th Cir. 2013); *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 980 (7th Cir. 2012). In the Sixth Circuit case, as explained in DHS's opening brief (*id*. at 35), and as apparently conceded by the Plaintiffs, the § 1983 claim had nothing to do with whether a provider was qualified; the claim was about a contract that required all Medicaid patients to receive incontinence products from a single, specific supplier. *See Harris v. Olszewski*, 442 F.3d 456 (6th Cir. 2006).

In this instance, SCDHHS immediately terminated PPSAT as a provider once PPSAT was deemed "unqualified" to participate in the Medicaid program because it provides abortions.[1] The concern articulated by Governor McMaster in Executive Order 2018-21 is certainty that no state funds be used to subsidize abortions provided by abortion clinics. This concern appears to be supported by the declaration of PPSAT's President and CEO that without public funds, PPSAT may need to reduce the services it offers and hours of operation: "Without Medicaid

---

[1] This is not a termination for cause under the enrollment agreement; rather this was an immediate termination upon a provider being deemed unqualified and is analogous to instances when SCDHHS immediately terminates the enrollment agreement of a provider enrolled in Medicaid upon exclusion from Medicare as provided in 42 C.F.R. 455.416(c).

reimbursements, we may not be able to keep providing services in the same manner we have been and may need to reduce hours at our health centers." Declaration of Jenny Black ¶ 27.

PPSAT and Edwards cite to no authority in support of their vague argument that PPSAT's termination from the South Carolina Medicaid Program is improper. Nor have Plaintiffs challenged the constitutionality of S.C. Code Ann. § 43-5-1185. Citations to articles regarding Governor McMaster's alleged comments about abortion and abortion providers do not support overturning a legitimate state action in terminating a provider that appears to subsidize its operations, including abortion services, with Medicaid reimbursements. This Court is not required to rely on PPSAT's vague assertions regarding lack of access to providers, PPSAT's alleged special knowledge and technology, or the possible harm to patients facing additional travel, reduced hours, and no same day birth control here – particularly since PPSAT decided to forego its right to administratively appeal SCDHHS's decision.

## II.     Plaintiffs Have Not Shown That They Will Suffer Irreparable Harm in the Absence of an Injunction

In addition to showing a substantial likelihood of success on the merits of their claim, Plaintiffs must show that they will suffer irreparable harm in the absence of the requested injunction. *See Winter*, 555 U.S. at 20. Plaintiffs argue that they will suffer irreparable harm because Edwards and other PPSAT patients are "deprived of their statutory right to choose their own provider" and "their care is being disrupted and they face reduced access to family planning services." Plaintiffs' Memorandum p. 14. However, as discussed in detail above, 42 U.S.C. § 1396(a)(23) does not unambiguously create a federal right for providers and individual patients that can be enforced under § 1983. *See* Part I., *supra*. Patients do not have right to Medicaid services rendered by a provider that the State has deemed is not a "qualified" Medicaid provider

and, while the provider and Medicaid beneficiary may disagree with the State regarding whether the provider is, in fact, qualified, neither provider nor patient have a right to bring an action in this court disputing the State's determination. Therefore, there is no *per se* irreparable harm in beneficiaries of the South Carolina Medicaid Program being denied the ability to choose PPSAT as a provider.

PPSAT also alleges it has been irreparably harmed "because it is unable to fulfill its mission of protecting and improving the health of underserved individuals, including low-income patients" and is reliant on public funding to support its programs. Plaintiffs' Memorandum pp. 15-16. However, although PPSAT sees nearly 5,000 patients each year, only 257 of PPSAT's patients in 2017 and 343 patients in this fiscal year through May 2018 were beneficiaries of the South Carolina Medicaid Program. Affidavit of Erin Boyce ¶¶ 10-11. In fiscal year 2017, PPSAT received a total of Eighty-Two Thousand Two Hundred Seventy-Eight and 94/100th dollars ($82,278.94) in Medicaid reimbursement and, in this fiscal year through May 2018, PPSAT received a total of Eighty-Two Thousand Six Hundred Ninety and 61/100th dollars ($82,690.61) in Medicaid reimbursement. Affidavit of Erin Boyce ¶¶ 10-11. PPSAT's mission and financial sustainability, exceed both the beneficiaries PPSAT sees and reimbursements PPSAT receives from the South Carolina Medicaid Program. Since providing services to underserved individuals is PPSAT's mission, and the monies it receives from Medicaid for services rendered to Medicaid recipients like Edwards, is so limited, the State's action does not appear to preclude PPSAT from fulfilling its mission during the pendency of this suit.

Furthermore, the physicians currently providing services at PPSAT have not been terminated from the Medicaid program pursuant to Executive Order 2018-21. Specifically, the

two physicians referenced by PPSAT in Plaintiffs' Opposition to Defendant's Motion to Transfer Venue Under 28 U.S.C. § 1404, NPI # 1740591452 (Medicaid Provider No. 400952) and NPI # 1124116017 (Medicaid Provider No. 125894), have not been disenrolled or terminated from the Medicaid Program and are still able to issue prescriptions that Medicaid would pay for if dispensed by a enrolled pharmacy. Affidavit of Nancy Sharpe ¶ 5. These physicians are able to continue to provide evaluation, management and professional services so long as they bill Medicaid for those services directly or through another enrolled practice entity. Affidavit of Nancy Sharpe ¶ 6. This therefore means that the only change PPSAT faces is that PPSAT would not be able to retain any portion of the remittance, which would otherwise subsidize other activities of PPSAT. If these individual physicians choose to continue to see Medicaid patients, the full claim amounts can be paid to the individual providers.

Finally, no injunction is warranted where the allegedly irreparable harm will continue even if the injunction is issued. Plaintiffs also allege that PPSAT is irreparably harmed because "if PPSAT's Medicaid termination is subsequently enjoined, some patients will undoubtedly remain confused about whether PPSAT is a Medicaid Provider in good standing, and for that reason will not return as patients." Plaintiffs' Memorandum p. 16. Since the alleged reason for the alleged confusion of these PPSAT patients is PPSAT's termination from the South Carolina Medicaid Program, which has already occurred, and PPSAT believes the confusion will continue even if Plaintiffs' motion for injunctive relief is granted, the injunction would not prevent the harm in question—a basic prerequisite for the issuance of a preliminary injunction.

**III.     Plaintiffs Have Not Established that the Balance of Equities Weighs In Their Favor**

In order for Plaintiffs to obtain a preliminary injunction, they must show that in balancing the equities, the harm they will suffer in the absence of an injunction is greater than the harm that Defendants will suffer if the injunction is granted.  *See Winter v. Natural Res. Def. Council,* 555 U.S. 7, 24 (2008.)  It is important to recognize that the relevant harm to Plaintiffs is not the harm that they would suffer from PPSAT being terminated from the South Carolina Medicaid Program indefinitely, but the harm that Plaintiffs would suffer if PPSAT is required to continue not to receive reimbursement from SCDHHS between now and when this Court renders a final decision on the merits.  Despite Plaintiffs' general concerns regarding access to healthcare for Medicaid beneficiaries and their more specific but still unsubstantiated concern that Edwards will be unable to find a new family planning provider if their motion is not granted, there is no compelling evidence in support of Plaintiffs' claim that PPSAT's patients who are Medicaid beneficiaries are being denied care as a result of SCDHHS' terminating PPSAT's enrollment in the Medicaid Program.  Approximately 56,917 providers participate in South Carolina's Medicaid program and over 97% of the pharmacies in South Carolina are enrolled with Medicaid.  Affidavit of Erin Boyce ¶¶ 12-13.  Despite PPSAT's allegations of harm to its Medicaid patients if they cannot receive reimbursement for services rendered at PPSAT, the fact is that there are many other providers available to see PPSAT's limited number of patients.  After all, the vast majority of Medicaid recipients in need of reproductive health services and birth control prescriptions receive those services and prescriptions elsewhere.  In 2017, PPSAT's Columbia and Charleston clinics together provided services to only 257 of the approximately 1.2 million South Carolinians who receive their healthcare through the Medicaid program.  *Id*. ¶ 15.

Plaintiffs argue that Defendant will suffer "no injury at all" if the injunction is granted, because "the state will continue to reimburse PPSAT for providing Medicaid services as it has for years" and would expend the same funds should a PPSAT patient seek care with another Medicaid provider. Plaintiffs' Memorandum p. 16. Although Plaintiffs may disagree, the State has a compelling reason to deny State funding to any physician or professional medical practice affiliated and operating in the same location as an abortion clinic. *See* Executive Order 2017-15. The South Carolina General Assembly recognized that concern in Section 43-5-1185 of the South Carolina Code of Laws, as amended, in directing that "State funds appropriated for family planning must not be used to pay for an abortion." If Plaintiffs' request for an injunction is denied, Plaintiff Edwards and all of PPSAT's patients who are enrolled with Medicaid may seek reproductive health services from approximately 56,917 providers, including providers who see patients at PPSAT's Charleston location and have not been excluded individually from participating in Medicaid, and fill prescriptions at pharmacies across the state. However, if Plaintiffs' motion is granted, then state funds will continue to subsidize PPSAT's non-Medicaid services, which can include abortion. As explained by Jenny Black, PPSAT's President and CEO in her declaration, Medicaid reimbursements are foundational to supporting PPSAT's other services: "Without Medicaid reimbursements, we may not be able to keep providing services in the same manner we have been and may need to reduce hours at our health centers." Declaration of Jenny Black ¶ 27. The chance of State funds subsidizing PPSAT's abortion-related services is therefore both real and significant. When combined with the remarkably low number of Medicaid recipients that PPSAT serves in South Carolina, this harm to the government surpasses the harm PPSAT will experience if required to wait for a full hearing on the merits before receiving additional Medicaid

reimbursements for services that Plaintiff Edwards and PPSAT's other Medicaid patients can certainly receive elsewhere.

### IV. **Plaintiffs Have Not Shown That Granting the Injunction Will Not Be Adverse to the Public Interest**

The fourth and final showing Plaintiffs must make is that granting the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Unlike the consideration of the harm to Defendants, the consideration of the public interest does not involve a balancing test. If the requested injunction is adverse to the public interest—even if the harm to the public interest may appear to some as less severe than the harm to Plaintiffs in the absence of an injunction - the injunction cannot issue. The General Assembly has found that allowing "State funds appropriated for family planning to be used to pay for an abortion" is adverse to the public interest. S.C. Code Ann. § 43-5-1185. Because the public interest is at the heart of the government's termination of PPSAT as a Medicaid provider, Plaintiffs' motion for a preliminary injunction must be denied.

### CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court deny Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.

[*Signature block on following page*]

Respectfully submitted,

JOLLEY LAW GROUP, LLC


 s/ Kelly M. Jolley
Kelly M. Jolley (09578)
Email: kmj@jolleylawgroup.com
Ariail B. Kirk (09250)
Email: abk@jolleylawgroup.com
1201 Main St., Suite 1100
Columbia, SC 29201
T: (803) 748-1259
F: (877) 668-1766

*Counsel for Defendant*

Dated: August 13, 2018