UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD SOUTH ATLANTIC and JULIE EDWARDS, on Her behalf and on behalf of others similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSHUA BAKER, in his official capacity As Director, South Carolina Department of Health and Human Services,<br><br>Defendant. | Civil Action No: 3:18-cv-2078-MGL |

# DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant, by and through his undersigned counsel, hereby submits this Memorandum in Support of his Motion to Dismiss all of the claims alleged by Plaintiffs in their Complaint in this matter on the following grounds:

1. Pursuant to FRCP Rule 12(b)(1) for lack of subject matter jurisdiction as

    a. Plaintiff Edwards does not possess standing as required by Article III, § 2 of the United States Constitution;

    b. Plaintiffs have waived any right to pursue any § 1983 claim in a federal forum and have failed to exhaust their administrative remedies; and

2. pursuant to FRCP Rule 12(b)(6) for failure to state a claim upon which relief can be granted as the right-of-action doctrine announced in *Gonzaga University v. Doe*, 536 U.S. 273 (2002), precludes Medicaid providers and patients from suing to enforce the provider-choice Medicaid plan requirement of 42 U.S.C. § 1396a(a)(23).

## A. NATURE OF THE CASE

Plaintiffs Planned Parenthood South Atlantic (PPSAT) and Julie Edwards, who brings this action on her own behalf and that of a purported class, brought this action pursuant to 42 U.S.C. § 1983 seeking to secure rights allegedly bestowed on the Plaintiffs by the Medicaid Act (Title XIX of the Social Security Act) and the Fourteenth Amendment of the United States Constitution. Plaintiffs seek injunctive relief and a declaratory judgment that Defendant has violated the Medicaid Act and the Fourteenth Amendment by terminating PPSAT's enrollment with the South Carolina Department of Health and Human Services as a Medicaid provider following the directive in Governor McMaster's Executive Order 2018-21 that abortion clinics and affiliated physicians are deemed unqualified to participate in the South Carolina Medicaid program. Complaint ¶¶ 1, 25, 47-58. Plaintiffs claim that PPSAT, and the patients served by its clinics and pharmacies, have been irreparably harmed by the exclusion of PPSAT from the Medicaid program and seek a temporary restraining order and preliminary injunction ordering Defendant to allow PPSAT to enroll as a Medicaid provider during the pendency of this suit.

## B. STATEMENT OF FACTS

### a. Defendant Baker

Defendant Joshua Baker is the Director of the South Carolina Department of Health and Human Services ("SCDHHS"). SCDHHS is the single state agency responsible for the administration in South Carolina of a program of Medical Assistance under Title XIX of the Social Security Act and makes all final decisions and determinations regarding the administration of the Medicaid program.

### b. Plaintiff PPSAT

Effective June 15, 2015, PPSAT entered into two Medicaid enrollment agreements with SCDHHS to provide pharmacy and physician services: (1) the June 5, 2015 PPSAT enrollment form for PPSAT Physician Group, Medicaid ID# 143724, NPI# 1851438147 and (2) the July 15, 2015 PPSAT Pharmacy, Medicaid ID# 715572, NPI#1497049555. Exhibits 1 and 2, respectively, hereinafter referred to as "Enrollment Agreements". This dispute arises under the terms of these Enrollment Agreements between SCDHHS and PPSAT for the above referenced providers. Id. Pursuant to the Enrollment Agreements, PPSAT, as a condition of participation and payment, agreed as follows:

> That, for any dispute arising under this agreement, the provider shall have as his sole and exclusive remedy the right to request a hearing from SCDHHS within thirty (30) calendar days of the SCDHHS action which he believes himself aggrieved. Such proceedings shall be in accordance with SCDHHS appeals procedures and S.C. Code Ann. 1-23-310 et. seq. (1976, as amended). Judicial review of any final agency administrative decision shall be in accordance with S.C. Code Ann. 1-23-380 (1976, as amended).
>
> That participation, all services rendered, and claims submitted shall be in compliance with all applicable federal and state laws and regulations and in accordance with the South Carolina Plan for Medical Assistance, bulletins, SCDHHS policies, procedures, and Medicaid Provider Manuals.

*Id*. These Enrollment Agreements remained in effect until July 13, 2018 when SCDHHS terminated PPSAT's Enrollment Agreements with the South Carolina Medicaid Program.

### c. Plaintiff Edwards

On or about April 5,2018, Plaintiff Edwards submitted an Application for Medicaid and Affordable Health Coverage known as the SCDHHS Form 3400. The SCDHHS Form 3400 contains an agreement outlining rights and responsibilities of Medicaid beneficiaries, including Edwards, which states as follows:

> **Read and Sign**. Please read the following rights and responsibilities. If you disagree with a statement, your eligibility for programs may be impacted. A signature is required to complete the application process and submit your application to the agency.
>
> …
>
> 8. If I think SCDHHS, the agency that administers Healthy Connections, the state's Medicaid program, has made an error I can appeal its decision. To appeal means to tell someone at SCDHHS that I think the action is wrong, and ask for a fair hearing. I must submit a written request for such a hearing to SCDHHS. I know that I may represent myself or be represented by someone other than myself.
>
> …
>
> **Sign this application.** The person who filled out Step 1 should sign this application. If you're an authorized representative, you may sign here, as long as you have provided the information required on DHHS Form 1282 - Authorized Representative.
>
> **By signing, I state that I have read and agree to the rights and responsibilities stated on this application**

For example, see Exhibit 3[1]. Plaintiff Edwards signed the SCDHHS Form 3400 indicating that she read and agreed to the above referenced rights and responsibilities, hereinafter referred to as the "Beneficiary Agreement". Additionally, the Medicaid Member Handbook which is provided to Medicaid Beneficiaries further elaborates on appeal rights as follows:

> **Fair hearing rights**
>
> You can ask for an appeal if your Medicaid coverage has changed, ended or been denied. You can also ask for an appeal if a medical service you need has been denied or delayed. For more information about the appeal process go to www.scdhhs.gov/appeals or call 1-888-835-2039.
>
> To ask for an appeal, submit a written request within 30 days from the date on your closure or other notice with your contact information (name, address, phone number and email), a copy of the denial or other notice received and a description of what and why you are appealing. You can submit an appeal:
>
> - Online at www.scdhhs.gov/appeals
> - By email at EligAppeals@scdhhs.gov for eligibility appeals or Appeals@scdhhs.gov for service appeals

---

[1] In the interest of protecting Ms. Edwards' privacy we have attached a blank DHHS Form 3400.

- Via fax to 1-888-835-2086
- By mail to SCDHHS, Attn.: Eligibility Appeals, P.O. Box 100101, Columbia, S.C. 29202-3101

Exhibit 4, SCDHHS Medicaid Member Handbook p. 20, also available at https://www.scdhhs.gov/sites/default/files/MedicaidHandbook%20053018-printBW.pdf. The SCDHHS website contains additional details and instruction. https://msp.scdhhs.gov/appeals.

### C. PROCEDURAL HISTORY

On July 13, 2018, Governor Henry McMaster issued Executive Order 2018-21, deeming abortion clinics such as PPSAT "unqualified to provide family planning services" and resulting in PPSAT no longer being qualified to provide services to Medicaid beneficiaries. Exhibit 5, Executive Order 2018-21. Upon PPSAT being deemed unqualified to be an enrolled Medicaid provider by Executive Order 2018-21, SCDHHS terminated PPSAT's above referenced enrollment agreements effective July 13, 2018. Exhibit 6, Termination Letter. This July 13, 2018 termination only terminated the following 2 Medicaid providers:

1. PPSAT Physician Group, Medicaid ID# 143724, NPI# 1851438147
2. PPSAT Pharmacy, Medicaid ID# 715572, NPI# 149704955

This termination was based on PPSAT being deemed unqualified by virtue of Executive Order 2018-21 rather than a termination for cause by SCDHHS.

On July 30, 2018, Plaintiffs filed the Summons and Complaint in this matter along with a Motion for a Temporary Restraining Order and Preliminary Injunction and Motion for Class Certification. On August 7, 2018, Defendant filed a Motion to Transfer Venue Under 28 U.S.C. § 1404. On August 14, 2018, PPSAT submitted a "Notice of Appeal from the immediate termination of its status as a Medicaid provider on July 13, 2018" dated August 13, 2018, citing

5

the jurisdiction basis of the appeal as "S.C. Code Ann. 44-6-190 and S.C. Code Ann. Regs. 126-152." Exhibit 7. On August 15, 2018, venue in this action was transferred from the Charleston Division to the Columbia Division.

### D. ARGUMENT

#### a. Plaintiffs' Complaint Should Be Dismissed Pursuant to FRCP 12(b)(1) for lack of subject matter jurisdiction.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377. Thus, in this action, the burden of proving subject matter jurisdiction exists rests on the Plaintiffs. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

A motion to dismiss under Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate claims. In reviewing a motion to dismiss under Rule 12(b)(1), the Court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991).

### i. Plaintiff Edwards' Complaint Should Be Dismissed Pursuant to FRCP 12(b)(1) for lack of subject matter jurisdiction as Plaintiff Edwards does not possess standing as required by Article III, § 2 of the United States Constitution.

In order for this Court to have jurisdiction, Plaintiffs must possess standing under Article III, § 2 of the United States Constitution. See *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013). Article III standing has three "irreducible minimum requirements":

1. an injury in fact (i.e., a 'concrete and particularized' invasion of a 'legally protected interest');

2. causation (i.e., a 'fairly ... trace[able]' connection between the alleged injury in fact and the alleged conduct of the defendant); and

3. redressability (i.e., it is 'likely' and not merely 'speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Pender v. Bank of Am. Corp.*, 788 F.3d 354, 365 (4th Cir. 2015) (quoting *Sprint Commc'ns Co., L.P. v. APCC Serv., Inc.*, 554 U.S. 269, 273-74 (2008)).

> Another Article III threshold question is whether a dispute is ripe for adjudication. A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact remains wholly speculative. The basic rationale of the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. When determining ripeness, we traditionally consider (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. A case is fit for adjudication when the action in controversy is final and not dependent on future uncertainties; conversely, a claim is not ripe when it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all. The hardship prong, on the other hand, is measured by the immediacy of the threat and the burden imposed on the plaintiffs.

*Kobe v. Keck* (4th Cir. 2016) (internal citations and quotation marks omitted).

In this case, Plaintiff Edwards, by her own admission, has no injury in fact. Plaintiff Edwards' Declaration filed with this Court on July 30, 2018 merely recounts her medical history (and notes her status as currently disabled) and states that she wants "to be able to continue getting care at [PPSAT]". ¶17. Plaintiff Edwards does not even aver that her only insurance coverage is government assistance, nor does Plaintiff Edwards allege that the physician she saw at PPSAT has been terminated from Medicaid. Here, Plaintiff Edwards' allegations are squarely based upon contingent future events that may not occur as anticipated, or indeed may not occur at all. Furthermore, the issues raised are not fit for judicial decision, they should be resolved through the administrative process. As such, Plaintiff Edwards' Complaint should be dismissed as it is not ripe.

### ii. Plaintiffs' Complaint Should Be Dismissed Pursuant to FRCP 12(b)(1) for lack of subject matter jurisdiction as Plaintiffs have waived any right to pursue any § 1983 claim in a federal forum.

PPSAT has waived the right to pursue any § 1983 claim in a federal forum by entering into its Enrollment Agreements with the SCDHHS, and Edwards has also waived the right to pursue any § 1983 claim in a federal forum by enrolling as a Medicaid beneficiary, both of which mandate jurisdiction in accordance with SCDHHS' regulations, 27 S.C. Code Ann. Regs. §126-150, et seq. (1976, as amended), and in accordance with the Administrative Procedures Act, S.C. Code Ann. §1-23-310 et seq., (1976, as amended). The law in this circuit, as set out in *Pee Dee Health Care, P.A. v. Sanford,* is that a healthcare provider's right to bring an action under § 1983 "can be limited by contract." 509 F.3d at 213 (4th Cir. 2007). As set forth in *Pee Dee Health Care*:

> Notwithstanding … that a right of action exists under § 1983 to enforce § 1396a(bb), there is nothing in federal law prohibiting a healthcare provider from waiving the right to pursue such a § 1983 claim in a federal forum. On the contrary, procedural rights under § 1983, like other federal constitutional and statutory rights, are subject to voluntary waiver. …
>
> This court has applied a voluntariness standard to determine the enforceability of agreements in which a party releases possible § 1983 claims. Where a party knowingly and willingly enters into an agreement that waives a constitutional right, the agreement is enforceable so long as it does not undermine the public's interest in protecting the right. …
>
> Healthcare providers in South Carolina are not required to accept Medicaid patients. Therefore, any decision on the part of a healthcare provider such as Pee Dee to enter into a contract for Medicaid reimbursement is voluntary... Because Pee Dee voluntarily waived its right to bring an action alleging improper reimbursement in federal court, the public interest opposing involuntary waiver of constitutional rights is no reason to hold this agreement invalid.
>
> Furthermore, the contract between Pee Dee and SCDHHS does not completely deprive Pee Dee of a remedy. ... Pee Dee did not contract away its right to bring an action under § 1983, but instead agreed as part of its contract for Medicaid reimbursement that all such claims would be pursued only through state administrative and judicial avenues. That is, Pee Dee's contracts do not involve a waiver of a constitutional right, but only the ancillary right to select a federal forum to pursue a statutory right.

*Pee Dee Healthcare, P.A. v. Sanford*, 509 F.3d at 212-13.

Absent the Enrollment Agreements, PPSAT is not entitled to any reimbursement at all from SCDHHS. Likewise, agreement to the rights and responsibilities of Medicaid beneficiaries contained in the Beneficiary Agreement was a condition to Edward becoming a Medicaid beneficiary, and Plaintiff Edwards' claims all arise by virtue of being a Medicaid beneficiary. No rights to Medicaid reimbursement or Medicaid covered services would exist absent PPSAT's Enrollment Agreements and Plaintiff Edwards' Beneficiary Agreement. See *Genesis Health Care, Inc., 3:16-cv-003376-CMC*; see also *Pee Dee Health Care, P.A., 509 F.3d 204*. In *Genesis Health Care, Inc. v. Soura*, the § 1983 action filed by a Federally Qualified Health Center was dismissed on the grounds that:

9

> As the Fourth Circuit noted in Pee Dee Healthcare, both "Sections (R) and (S) reflect an agreement to pursue administrative appeals in a state tribunal." *Pee Dee Health Care*, 509 F.3d at 208, n.6. This conclusion is confirmed by the regulation and statute referenced in the relevant provisions. DHHS Regulation 126-150 and S.C. Code § 1-23-380. As explained in *Pee Dee Health Care*, "Regulation 126-150(B) provides that the tribunal to hear such appeals would be the state administrative hearing system" and the appeal allowed under Section 1-23-380 is to "the South Carolina Court of Appeals or the Administrative Law Court." *Pee Dee Health Care*, 509 F.3d at 208, n.5.

*Genesis Health Care, Inc., 3:16-cv-003376-CMC* (footnote omitted). While the PPSAT Enrollment Agreements and Plaintiff Edwards' Beneficiary Agreement may not contain the exact same clauses as the FQHC contracts at issue in both *Pee Dee Health Care, P.A.* and *Genesis Health Care, Inc. v. Soura*, the Enrollment Agreements and Beneficiary Agreement clearly reflect an agreement to pursue administrative appeals in a state tribunal pursuant to DHHS Regulation 126-150 and S.C. Code § 1-23-380.

Because both Plaintiffs have voluntarily waived the right to pursue any § 1983 claim in a federal forum by contract, Plaintiffs' Complaint should be dismissed pursuant to FRCP Rule 12(b)(1) for lack of subject matter jurisdiction

### iii. Plaintiffs' Complaint must be Dismissed pursuant to FRCP 12(b)(1) for lack of subject matter jurisdiction as Plaintiffs have failed to exhaust their administrative remedies.

Additionally, Plaintiffs have failed to exhaust their administrative remedies as required by South Carolina law and their agreements with SCDHHS as discussed above. See *Unisys Corp. v. South Carolina Budget and Control Bd. Div. of Gen. Servs. Info. Mgmt. Office*, 346 S.C. 158, 551 S.E.2d 263 (2001). An appeal filed pursuant to SCDHHS' regulations is required by the agreement of the parties. Such appeal is defined by regulation as "[t]he formal process of review and adjudication of Agency determinations, which shall be afforded to any person possessing a right

to appeal pursuant to statutory, regulatory and/or contractual law; provided, that to the extent that an appellant's appellate rights are in any way limited by contract with the Agency or assigned to the Agency, said contractual provision shall control." 27 S.C. Code Ann. Regs. § 126-150(B). The Complaint does not allege that the appeals procedure has been followed by either Plaintiff.

Furthermore, the allegations made by Plaintiffs are the type of issues that the SCDHHS Division of Appeals and Hearings was specifically designed and created to rule upon. As discussed above, an appeal with the SCDHHS Division of Appeals and Hearings is defined as the "formal process of review and adjudication of Agency determinations, which shall be afforded to any person possessing a right to appeal pursuant to statutory, regulatory and/or contractual law…" 27 S.C. Code Ann. Regs. § 126-150(B). The mandatory language of the regulation further requires that "[a]n appeal shall be initiated by the filing of a notice of appeal" which "shall be in writing and shall be directed to Appeals and Hearings, Department of Health and Human Services…." 27 S.C. Code Ann. Regs. § 126-152(A) and (B). This portion of the regulation goes on to contemplate appeals by providers, such as Plaintiff PPSAT, requiring that a provider's notice of appeal "shall state with specificity the adjustment(s) or disallowance(s) in question, the nature of the issue(s) in contest, the jurisdictional basis of the appeal and the legal authority upon which the appellant relies." 27 S.C. Code Ann. Regs. § 126-152(B).

Having failed to exhaust its administrative remedies, Plaintiffs' case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

**b. Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs' Complaint must be dismissed for failure to state a claim upon which relief can be granted, as the right-of-action doctrine announced in *Gonzaga University v. Doe*, 536 U.S. 273 (2002), preclude Medicaid providers and patients from suing to enforce the provider-choice Medicaid plan requirement of 42 U.S.C. § 1396a(a)(23).**

Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs' Complaint must be dismissed for failure to state a claim upon which relief can be granted, as the right-of-action doctrine announced in *Gonzaga University v. Doe*, 536 U.S. 273 (2002), precludes Medicaid providers and patients from suing to enforce the provider-choice Medicaid plan requirement found in 42 U.S.C. § 1396a(a)(23). Plaintiffs allege that Defendant's termination of PPSAT from the Medicaid program as directed in Executive Order No. 2018-21 violates a federal right of patients, like Edwards, "to choose any willing, qualified health care provider in the Medicaid program". Complaint ¶ 48. While there is a split among the circuits that have reviewed this issue because some courts have relied on outdated precedent, the right-of-action doctrine set out in *Gonzaga University v. Doe*, 536 U.S. 273 (2002), precludes Medicaid providers and patients from suing to enforce the provider-choice Medicaid plan requirement of 42 U.S.C. § 1396(a)(23).

In this case, Plaintiffs focus on one specific requirement of state Medicaid plans, which is sometimes referred to as the "free choice of qualified provider" provision. As set out in 42 U.S.C. § 1396a(a)(23), state Medicaid plans "must provide that … any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required …, who undertakes to provide him such services …." Section 1396a(a)(23) does not define the term "qualified to perform the service or services provided." Instead, Medicaid regulations permit states to "establish

reasonable standards relating to the qualifications of providers." 42 C.F.R. § 431.51(c)(2). Moreover, states are also entitled to exclude providers based on any reason that the Secretary is allowed to exclude providers under 42 U.S.C. §§ 1320a-7, 1320a-7a, or 1395cc(b)(2). 42 U.S.C. § 1396a(p)(1). This express provision of grounds for disqualification is "in addition to any other authority," which courts have concluded "permit[s] a state to exclude an entity from its Medicaid program for any reason established by state law." *First Med. Health Plan v. Vega-Ramos*, 479 F.3d 46, 53 (1st Cir. 2007). A Senate Report illustrates the same: "This provision is not intended to preclude a State from establishing, under State law, *any other bases* for excluding individuals or entities from its Medicaid program." S. Rep. No. 100-109, at 20 (1987) (emphasis added), *as reprinted in* 1987 U.S.C.C.A.N. 682, 700.

Here, PPSAT's disqualification is based on the authority and reason established by state law, as South Carolina state law has clearly established that "State funds appropriated for family planning must not be used to pay for an abortion". S.C. Code Ann. § 43-5-1185. Executive Order 2018-21 specifically cites to and relies upon S.C. Code Ann. § 43-5-1185. Exhibit 5. The record is clear that SCDHHS and the Defendant are absolutely entitled by federal law to exclude Medicaid providers for reasons established by state law. Moreover, PPSAT filed a Declaration on July 30, 2018 of Jenny Black, President and CEO of PPSAT, admitting that "[w]ithout Medicaid reimbursements, [PPSAT] may not be able to keep providing services in the same manner we have been and may need to reduce hours at our health centers." Declaration of Jenny Black, dated July 26, 2016, ¶ 27; see also Complaint ¶ 37.

Nonetheless, Plaintiffs read into 42 U.S.C. § 1396a(a)(23) a conferred individual right for Medicaid beneficiaries to have the provider of their choice be deemed qualified by the State. A plain reading of the statute reveals that such a right is—to say the least—not clear and

unambiguous from the text. Plaintiffs' position becomes even less plausible when the provision is read in the context of the entire Medicaid Act, including the provisions of the Act (e.g., 42 U.S.C. § 1396a(p)(1) and the cross-referenced statutes) that expressly permit states to exclude providers from the Medicaid program for ethical, professional, and fiscal misconduct. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole....") (quotations and citations omitted).

A more literal reading of § 1396a(a)(23)—which properly takes into account the exclusionary provisions in the Medicaid Act—supports the view that the statute presupposes a State plan will identify qualified providers and addresses a Medicaid patient's ability to freely choose among those providers deemed qualified by the State without the State or federal government requiring the patient see a particular qualified provider. Accordingly, if there is any individual federal right clearly and unambiguously conferred, it is only the right of a Medicaid patient to choose among the group of providers deemed qualified by the State, not the far broader right to have a particular provider deemed qualified. *See* Plaintiffs' Memorandum pp. 12-13.

The Medicaid Act is Spending Clause legislation. The Secretary is charged with ensuring that States substantially comply with plan requirements before approving federal matching grants. 42 U.S.C. § 1396c. If the Secretary finds that a State plan "has been so changed that it no longer complies" with the requirements of Section 1396a or that "in the administration of the plan there is a failure to comply substantially with any such provision," then the Secretary "shall notify [the] State [] . . . that further payments will not be made to the State." *Id*. Payments will be discontinued

"until the Secretary is satisfied that there will no longer be any such failure to comply." *Id*. The Secretary may, in her discretion, choose to "limit payments to categories under or parts of the State plan not affected by [the] failure [to comply]" instead of cutting off funding completely. *Id*. CMS's disapproval notwithstanding, a state may nonetheless carry out a noncompliant Medicaid plan. But CMS may then decide not to pay the state some or all of the federal matching funds payable with regard to a non-compliant plan. 42 U.S.C. § 1396c. Alternatively, the Secretary may waive compliance with requirements of the Medicaid Act. 42 U.S.C. § 1396n(b)(4).

The Supreme Court's more recent jurisprudence has acknowledged its evolution toward "reject[ing] attempts to infer enforceable rights from Spending Clause statutes." *Gonzaga University v. Doe*, 536 U.S. 273, 281 (2002). In their Memorandum in support, Plaintiffs do not contest that the "Free Choice of Provider" provision at issue is a Spending Clause provision. Accordingly, they also do not contest that a private right of action under 42 U.S.C. § 1983 to enforce 42 U.S.C. § 1396a(a)(23) is only available if, and to the extent that, "Congress speaks with a clear voice and manifests an unambiguous intent to confer individual rights. . . ." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002). They also do not contest the clear conclusion if this proposition is carried forward: that any federal right enforced by § 1983 must be strictly limited to the right that Congress clearly and unambiguously intended to confer. No unambiguous right exists in this case. Instead, Plaintiffs rely on an overbroad reading of § 1396a(a)(23) that was already rejected by the United States Supreme Court in *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 774 (1980), to collaterally challenge a decision made by SCDHHS to terminate a provider from the Medicaid program once that provider was deemed "unqualified" by the Governor of South Carolina.

In *O'Bannon*, the Supreme Court was called on to interpret the "contours of the right conferred" by 42 U.S.C. § 1396a(a)(23) and the Court offered a targeted review of the substantive right that § 1396a(a)(23) confers on Medicaid beneficiaries. 447 U.S. at 786. As set forth in *O'Bannon*, § 1396a(a)(23) concerns Medicaid patients' freedom to choose among the pool of providers deemed qualified by the State, not the antecedent question whether a particular provider has been rightly included or excluded by the State from the pool of qualified providers. 447 U.S. at 785. Plaintiffs cite *O'Bannon* only for the proposition that § 1396a(a)(23) "confers an absolute right to be free from government interference with the choice to remain in a home that continues to be qualified", 447 U.S. at 785, while ignoring its authoritative interpretation of §1396a(a)(23): "But it clearly does not confer a right on a recipient to enter an unqualified home and demand a hearing to certify it, nor does it confer a right on a recipient to continue to receive benefits for care in a home that has been decertified. Second, although the regulations do protect patients by limiting the circumstances under which a home may transfer or discharge a Medicaid recipient, they do not purport to limit the Government's right to make a transfer necessary by decertifying a facility." *Id*.

In light of *O'Bannon*, it is simply impossible to conclude that Congress clearly and unambiguously provided the right that the Plaintiffs claim PPSAT's patients who participate in the South Carolina Medicaid program possess—the right to choose a provider that the State has terminated from the Medicaid program based on a decision that the provider is unqualified, and where the provider did not appeal the termination. Furthermore, *O'Bannon* acknowledges that the regulatory scheme contemplates that patients "may be injured ... due to revocation" of a single provider and "may have difficulty locating other [providers] they consider suitable or may suffer both emotional and physical harm as a result of disruption." *O'Bannon* at 787, 100 S.Ct. 2467.

Plaintiffs do not address the application of O'Bannon's "contours of the right conferred" by 42 U.S.C. § 1396a(a)(23) in their Memorandum. Instead, Plaintiffs rely on cases from the Ninth, Seventh, Fifth and Sixth Circuits which all found a 42 U.S.C. § 1983 claim to lie for enforcement of 42 U.S.C. § 1396a(a)(23). However, these cases do not all address analogous questions. In the Ninth Circuit and Seventh Circuit cases, the right being enforced by § 1983 was the patient's right to freely choose among the pool of qualified providers; the States in those cases did not even suggest that the providers in question had committed misconduct excluding them from the pool of qualified providers. *See Planned Parenthood of Ariz., Inc. v. Betlach*, 727 F.3d 960, 973 (9th Cir. 2013); *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 980 (7th Cir. 2012). In the Sixth Circuit case the § 1983 claim had nothing to do with whether a provider was qualified; the claim was about a contract that required all Medicaid patients to receive incontinence products from a single, specific supplier. *See Harris v. Olszewski*, 442 F.3d 456 (6th Cir. 2006).

In this instance, SCDHHS immediately terminated PPSAT as a provider once PPSAT was deemed "unqualified" to participate in the Medicaid program because it provides abortions.[2] The concern articulated by Governor McMaster in Executive Order 2018-21 is certainty that no state funds be used to subsidize abortions provided by abortion clinics, as the South Carolina legislature has mandated that "State funds appropriated for family planning must not be used to pay for an abortion". S.C. Code Ann. § 43-5-1185. As discussed above, Governor McMaster's concern is echoed by the declaration of PPSAT's President and CEO that without public funds, PPSAT may

---

[2] This is not a termination for cause under the enrollment agreement; rather this was an immediate termination upon a provider being deemed unqualified and is analogous to instances when SCDHHS immediately terminates the enrollment agreement of a provider enrolled in Medicaid upon exclusion from Medicare as provided in 42 C.F.R. 455.416(c).

17

need to reduce the services it offers and hours of operation: "Without Medicaid reimbursements, we may not be able to keep providing services in the same manner we have been and may need to reduce hours at our health centers." Declaration of Jenny Black ¶ 27.

PPSAT and Edwards cite to no authority in support of their vague argument that PPSAT's termination from the South Carolina Medicaid Program is improper. Nor have Plaintiffs challenged the constitutionality of S.C. Code Ann. § 43-5-1185. Citations to articles regarding Governor McMaster's alleged comments about abortion and abortion providers do not support overturning a legitimate state action in terminating a provider that appears to subsidize its operations, including abortion services, with Medicaid reimbursements.

### E. CONCLUSION

For the reasons stated herein Defendant respectfully requests that this action to be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of lack of subject matter jurisdiction and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

[*Signature block on following page.*]

Respectfully submitted,

JOLLEY LAW GROUP, LLC


s/ Kelly M. Jolley
Kelly M. Jolley (Fed. Bar No. 09578)
Email: kmj@jolleylawgroup.com
Ariail B. Kirk (Fed. Bar No. 09250)
Email: abk@jolleylawgroup.com
1201 Main St., Suite 1100
Columbia, SC 29201
T: (803) 748-1259
F: (877) 668-1766

*Counsel for Defendant*

Dated: August 20, 2018

19