

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD SOUTH ATLANTIC and JULIE EDWARDS, on her behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSHUA BAKER, in his official capacity as Director, South Carolina Department of Health and Human Services,<br><br>Defendant. | Civil Action No.: 3:18-2078-MGL |

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

## I. INTRODUCTION

This is an action for violation of 42 U.S.C. § 1396a(a)(23)(A), a provision of the Medicaid Act, and related constitutional claims. The Court has jurisdiction over this matter under 28 U.S.C. § 1331.

Pending before the Court is Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. ECF No. 5. Having carefully considered Plaintiffs' Motion, the response, the reply, the record, and the applicable law, it is the judgment of the Court Plaintiffs' Motion will be granted, and Plaintiffs' requested preliminary injunction will be issued.

## II. FACTUAL AND PROCEDURAL HISTORY

This action arises out of the South Carolina Department of Health and Human Services' (SCDHHS) termination of Plaintiff Planned Parenthood South Atlantic (PPSAT) from South Carolina's Medicaid program. SCDHHS is the state agency that administers South Carolina's Medicaid program, and Defendant is the director of SCDHHS. ECF No. 1 ¶ 16.

PSSAT operates two health centers in South Carolina—one in Charleston and one in Columbia. *Id.* ¶ 14. Prior to SCDHSS' termination of PPSAT from South Carolina's Medicaid program, PPSAT treated patients insured through Medicaid at both of its South Carolina locations. ECF No. 5-2 at 3. PPSAT offers its patients, including but not limited to those insured through Medicaid, a range of family planning, reproductive health, and preventive care services at its Charleston and Columbia health centers. ECF No. 1 ¶ 14. PPSAT performs abortions at its South Carolina health centers, but South Carolina Medicaid does not cover abortions except under limited circumstances required by federal law. ECF No. 5-2 at 3. Plaintiff Julie Edwards (Ms. Edwards) is a South Carolina resident insured through Medicaid who has been treated at the Columbia location of PPSAT. ECF No. 5-3 ¶¶ 1-2, 11-13.

On August 24, 2017, South Carolina Governor Henry McMaster issued Executive Order No. 2017-15 directing all State agencies to "take any and all necessary actions . . . to cease providing State or local funds . . . to any physician or professional medical practice affiliated with an abortion clinic and operating concurrently with and in the same physical, geographic location or footprint as an abortion clinic." ECF No. 5-2 at 14. On July 13, 2018, Governor McMaster issued Executive Order No. 2018-21 instructing SCDHHS to "deem abortion clinics . . . and any affiliated physicians or professional medical practices . . . enrolled in the Medicaid program as

2

unqualified to provide family planning services and, therefore, to immediately terminate them upon due notice and deny any future such provider enrollment applications for the same." *Id.* at 28. That same day, SCDHHS notified PPSAT it was no longer qualified to provide services to Medicaid beneficiaries, and SCDHHS was therefore terminating PPSAT's Medicaid enrollment agreements effectively immediately. *Id.* at 30.

PPSAT and Ms. Edwards filed their complaint in this matter on July 27, 2018. ECF No. 1. Ms. Edwards has brought suit on her own behalf and as representative of a purported class of South Carolina Medicaid beneficiaries who have obtained or seek to obtain covered healthcare services from PPSAT. *See id.* ¶¶ 15, 41-46. In their complaint, Plaintiffs allege Defendant's actions in terminating PPSAT from South Carolina's Medicaid program violate 42 U.S.C. § 1396a(a)(23), a provision of the Medicaid Act, as well as the Fourteenth Amendment of the United States Constitution. Plaintiffs seek declaratory and injunctive relief.

Plaintiffs filed their Motion for Temporary Restraining Order and Preliminary Injunction on July 30, 2018. ECF No. 5. Defendants filed a response in opposition on August 13, 2018, ECF No. 16, to which Plaintiffs replied on August 20, 2018, ECF No. 24. On August 23, 2018, the Court held a hearing on Plaintiffs' Motion at which counsel for Plaintiffs and Defendant were present. The Court, having been fully briefed on the relevant issues, is now prepared to discuss the merits of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

The Court notes there are two additional motions pending. ECF Nos. 6, 25. In the interest of expeditiously ruling on Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, however, the Court will address the other pending motions at a later date.

## III. STANDARD OF REVIEW

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). "A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (citation omitted).

## IV. DISCUSSION AND ANALYSIS

As an initial matter, the Court notes Plaintiffs are moving for injunctive relief on their Medicaid Act claim only. ECF No. 5-1 at 14. Therefore, the Court will confine its analysis to that claim. The Court will first consider whether Ms. Edwards has made the requisite showing for injunctive relief on her Medicaid Act claim.

### A. Likelihood of Success on the Merits

#### 1. Contentions of the Parties

Ms. Edwards argues she is likely to succeed on her Medicaid Act claim because Defendant's termination of PPSAT from South Carolina's Medicaid program violates 42 U.S.C. § 1396a(a)(23)(A), which provides "any individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services . . . ." Ms. Edwards asserts it is uncontested PPSAT is a medically and professionally qualified provider, and § 1396a(a)(23)(A) therefore guarantees her the right to choose PPSAT as her provider. She

explains § 1396a(a)(23)(A) prohibits Defendant from excluding PPSAT from South Carolina's Medicaid program merely because PPSAT provides abortions outside the Medicaid program. Ms. Edwards further maintains § 1396a(a)(23)(A) creates a private right of action for Medicaid beneficiaries enforceable through 42 U.S.C. § 1983.

In support of her contentions, Ms. Edwards notes the overwhelming majority of courts that have considered these issues, including the Fifth, Sixth, Seventh, Ninth, and Tenth Circuit Courts of Appeals, have held § 1396a(a)(23)(A) creates a private right of action and prohibits a State from terminating qualified providers from its Medicaid program for reasons unrelated to professional competency to perform the services at issue.

Defendant responds Ms. Edwards is unlikely to succeed on her Medicaid Act claim because § 1396a(a)(23)(A) fails to create a private right of action enforceable through § 1983. Defendant posits § 1396a(a)(23)(A), when read in context of § 1396a(a) as a whole, is meant to protect patients in the aggregate, not to confer an unambiguous right upon individuals such as Ms. Edwards. Accordingly, Defendant asserts the remedy for a violation of § 1396a(a)(23)(A) is the termination of federal funding to an offending State's Medicaid program as opposed to a private action. Defendant acknowledges the majority of courts to consider this issue have held § 1396a(a)(23)(A) does confer a private right of action upon patients, but Defendant relies upon *Does v. Gillespie*, 867 F.3d 1034 (8th Cir. 2017), in support of his position. Defendant further avers Ms. Edwards' interpretation of § 1396a(a)(23)(A) is overly broad, and, under *O'Bannon v. Town Court Nursing Center*, 447 U.S. 774 (1980), the right outlined in § 1396a(a)(23)(A) is the right to choose among the pool of providers determined to be qualified by a State, not the right to have a particular provider deemed qualified. Defendant also claims Ms. Edwards is unable to

5

maintain her Medicaid Act cause of action because she has failed to exhaust state administrative remedies available to her.

Defendant insists that, even if Ms. Edwards were able to maintain her Medicaid Act claim, the claim lacks merit. Defendant posits § 1396a(a)(23)(A) does not define the term "qualified," and § 1396a(p)(1) permits a State to exclude providers from its Medicaid program for any reason established by State law. Defendant argues it may therefore terminate PPSAT from South Carolina's Medicaid program because PPSAT performs abortions, and S.C. Code Ann. § 43-5-1185 mandates "States funds appropriated for family planning must not be used to pay for an abortion."

2. Analysis

a) **Private Right of Action**

The Court must first determine the threshold issue of whether § 1396a(a)(23)(A) creates a private right of action enforceable through §1983 such that Ms. Edwards may pursue her Medicaid Act claim. Although there is no controlling precedent on this issue, the Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuit Courts of Appeals have considered this question, and all of those courts except the Eighth Circuit have held § 1396a(a)(23)(A) does confer a private right of action. *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1224-29 (10th Cir. 2018) (holding § 1396a(a)(23) creates a private right of action); *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 457-62 (5th Cir. 2017) (same); *Planned Parenthood Ariz. Inc. v. Betlach*, 727 F.3d 960, 965-68 (9th Cir. 2013) (same); *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 972-77 (7th Cir. 2012) (same); *Harris v. Olszewski*, 442 F.3d 456, 460-65 (6th Cir. 2006) (same). *Contra Does v. Gillespie*, 867 F.3d 1034, 1039-45 (8th Cir. 2017) (holding § 1396a(a)(23)(A) does not create a private cause of action). The Court agrees with the

well-reasoned analysis of the Fifth, Sixth, Seventh, Ninth, and Tenth Circuit Courts of Appeals and holds § 1396a(a)(23)(A) confers a private right of action on Medicaid beneficiaries such as Ms. Edwards.

To create a private cause of action enforceable through § 1983, a federal statute must unambiguously confer a federal right, not simply a benefit or interest. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). To determine whether this requirement has been met, a court must examine whether Congress intended the statute to benefit the plaintiff, whether the right is "so 'vague and amorphous' that its enforcement would strain judicial competence," and whether the obligation created by the statute is mandatory. *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997). "Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Gonzaga*, 536 U.S. at 284.

Section 1396a(a)(23)(A) provides "any individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person qualified to perform the service or services required . . . who undertakes to provide him such services." The Court holds this language unambiguously confers a right upon Medicaid-eligible patients, such as Ms. Edwards. *See, e.g.*, *Andersen*, 882 F.3d at 1225 ("[W]e have no trouble concluding that Congress unambiguously intended to confer an individual right on Medicaid-eligible patients." (citation omitted)). Contrary to Defendant's argument, the clear language of this provision reveals it is meant to confer a right upon "any individual eligible for medical assistance," not simply patients in the aggregate. *See Comm'r of Ind.*, 699 F.3d at 974 ("This language does not simply set an aggregate plan requirement, but instead establishes a personal right to which all Medicaid patients are entitled." (citation omitted)). Thus, individual patients like Ms. Edwards are indeed the intended beneficiaries of the right conferred.

Moreover, the right conferred—the right to obtain assistance from any qualified and willing provider—is neither vague nor amorphous. *See Comm'r of Ind.*, 699 F.3d at 974 ("[T]he right is administrable and falls comfortably within the judiciary's core interpretive competence."). Additionally, the right is plainly expressed in mandatory terms, as the statute states: "A State plan for medical assistance must . . . provide that (A) any individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service . . . who undertakes to provide him such services . . . ." § 1396a(a)(23)(A); *see also Comm'r of Ind.*, 699 F.3d at 974 ("Finally, § 1396a(a)(23) is plainly couched in mandatory terms.").

The Court rejects Defendant's suggestion there is no private right of action under § 1396a(a)(23)(A) because the appropriate remedy for violation of the provision, according to Defendant, is the termination of federal funding to an offending State's Medicaid program. The ability to withhold federal funding does not constitute a comprehensive enforcement scheme revealing an intent of Congress to foreclose private enforcement, and "private enforcement of § 1396a(a)(23) in suits under § 1983 in no way interferes with the Secretary's prerogative to enforce compliance using [his] administrative authority." *Comm'r of Ind.*, 699 F.3d at 975; *see also Olszewski*, 442 F.3d at 462-63.

The Court likewise rejects Defendant's contention that a beneficiary's ability to challenge the termination of a provider deemed unqualified by a State from the State's Medicaid program has been foreclosed by the Supreme Court's decision in *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773 (1980). In *O'Bannon*, the Supreme Court considered whether Medicaid beneficiaries had procedural due process rights prior to the termination of a nursing home's Medicaid provider agreement, and it was uncontested the nursing home was unqualified to provide the services at

8

issue. *O'Bannon*, 447 U.S. at 775-90. In contrast, this case involves a claim Ms. Edwards' substantive rights have been violated, and, as discussed in more detail below, there is no suggestion PPSAT is professionally incompetent or unable to perform family planning services. Thus, *O'Bannon* is inapposite and has no bearing on this case. *See Andersen*, 882 F.3d at 1231-32; *Comm'r of Ind.*, 699 F.3d at 977.

Accordingly, the Court holds, in accordance with the Fifth, Sixth, Seventh, Ninth, and Tenth Circuit Courts of Appeals, that § 1396a(a)(23)(A) confers a private right of action enforceable through § 1983 on Medicaid patients such as Ms. Edwards.

### b) Exhaustion of Administrative Remedies

The Court must next consider Defendant's assertion Ms. Edwards is unable to maintain her Medicaid Act claim because she has failed to exhaust available state administrative remedies. Defendant argues Ms. Edwards' application for Medicaid, ECF No. 25-4, and the SCDHHS Medicaid Member Handbook, ECF No. 25-5, require her to pursue an administrative appeal. The provision Defendant relies upon in Ms. Edwards' Medicaid application states: "If I think SCDHHS . . . has made an error I can appeal its decision. To appeal means to tell someone at SCDHHS that I think the action is wrong, and ask for a fair hearing." ECF No. 25-4 at 16. The relevant portion of the SCDHHS Medicaid Member Handbook provides: "You can ask for an appeal if your Medicaid coverage has changed, ended, or been denied. You can also ask for an appeal if a medical service you need has been denied or delayed." ECF No. 25-5 at 21.

"[A]s a general rule, a plaintiff bringing a suit pursuant to 42 U.S.C. § 1983 does not have to exhaust state administrative remedies before filing suit in federal court." *Talbot v. Lucy Corr Nursing Home*, 118 F.3d 215, 218 (4th Cir. 1997) (citing *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496 (1983)). Exceptions to this general rule have been recognized for circumstances in

which Congress has explicitly provided state administrative remedies must be exhausted prior to bringing suit under § 1983 or implicitly indicated such in a statutory scheme. *Id.* at 219.

The Medicaid Act contains no provision explicitly requiring the exhaustion of state administrative remedies prior to bringing a § 1983 suit for violation of the Act. *Id.* Likewise, the Court does not interpret the Medicaid Act as implicitly requiring exhaustion of administrative remedies. Although there is a state administrative appeal process available to Ms. Edwards, the "mere provision of state administrative remedies . . . is not enough to demonstrate an implicit Congressional intent to impose an exhaustion requirement on a plaintiff seeking to bring a § 1983 action." *Id.* (citations omitted). Further, the relevant provisions of Ms. Edwards' Medicaid application and the SCDHHS Medicaid Member Handbook speak in optional rather than mandatory terms; they provide Ms. Edwards "can" appeal, not that she must.

Accordingly, the Court holds Ms. Edwards was not required to exhaust state administrative remedies prior to bringing this action. *See id.* at 220 (holding the "existence of state administrative review procedures does not suffice to evidence Congress' intent to implicitly create an exhaustion requirement" for claims under a different provision of the Medicaid Act given "the strong presumption against requiring the exhaustion of state administrative remedies in § 1983 suits.").

The Court further holds, even if there were a requirement for Ms. Edwards to exhaust state administrative remedies, her failure to do so would be excused under the circumstances because the pursuit of an administrative appeal before SCDHHS would be futile given the clear directive in Governor McMaster's Executive Order No. 2018-21 for SCDHHS to deem abortion clinics unqualified to provide family planning services and to terminate them from South Carolina's Medicaid program. *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (explaining there is a futility exception to the doctrine of exhaustion of administrative remedies).

### c) Violation of 42 U.S.C. § 1396a(a)(23)(A)

The Court will now turn to the question of whether Defendant's termination of PPSAT from South Carolina's Medicaid program violates § 1396a(a)(23)(A). The Court notes the Fifth, Seventh, Ninth, and Tenth Circuit Courts of Appeals have held, in well-reasoned and persuasive opinions, that similar terminations of PPSAT affiliates from the Medicaid programs of other states violated § 1396a(a)(23)(A). *Andersen*, 882 F.3d at 1229-36; *Gee*, 862 F.3d at 462-68; *Betlach*, 727 F.3d at 968-74; *Comm'r of Ind.*, 669 F.3d at 977-80.

As set forth above, § 1396a(a)(23)(A) provides "any individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person qualified to perform the service or services required . . . who undertakes to provide him such services . . . ." The Medicaid Act does not define the term "qualified." In § 1396a(a)(23)(A), however, the term "qualified" is modified by the phrase "to perform the service or services required." *See Betlach*, 727 F.3d at 969. Thus, the relevant qualification to which the provision refers is a provider's qualification to perform the medical services at issue. *See id.* The Court agrees with the Seventh Circuit that "[r]ead in context, the term 'qualified' as used in § 1396a(a)(23) unambiguously relates to a provider's fitness to perform the medical services the patient requires." *Comm'r of Ind.*, 699 F.3d at 978. Therefore, for purposes of § 1396a(a)(23)(A), "qualified" means "capable of performing the needed medical services in a professionally competent, safe, legal, and ethical manner." *Id.*

It is undisputed PPSAT is professionally competent and is capable of performing family planning services for Medicaid patients. Defendant claims, however, it may exclude PPSAT from South Carolina's Medicaid program for any reason established by State law pursuant to § 1396a(p)(1). Defendant reasons it may therefore terminate PPSAT from the Medicaid program

because PPSAT performs abortions, and S.C. Code Ann. § 43-5-1185 mandates "State funds appropriated for family planning must not be used to pay for an abortion." The Court disagrees.

First, S.C. Code Ann. § 43-5-1185 provides no basis for terminating PPSAT from South Carolina's Medicaid program because, except in narrow circumstances required by federal law, the State's Medicaid program does not cover abortions. ECF No. 5-2 at 3. PPSAT is reimbursed through the Medicaid program on a fee-for-service basis for covered services, and the Medicaid reimbursement rates in South Carolina do not even fully cover the cost of the Medicaid services PPSAT provides. ECF No. 24-1 ¶¶ 2-3. Thus, PPSAT's inclusion in South Carolina's Medicaid program results in neither the direct nor indirect use of State funds to pay for abortions.

Moreover, the Court rejects Defendant's implication § 1396a(p)(1) permits a State to terminate a provider from its Medicaid program for any reason whatsoever as long as the reason is bolstered by State law. Section 1396a(p)(1) provides a State may exclude a provider from its Medicaid program for any reason the Secretary of the United States Department of Health and Human Services may exclude a provider, "[i]n addition to any other authority." Although § 1396a(p)(1) gives States broad authority to exclude providers from their Medicaid programs, *see, e.g.*, *Andersen*, 882 F.3d at 1230, it does not provide States with "unlimited authority to exclude providers for any reason whatsoever," *Comm'r of Ind.*, 699 F.3d at 979. Notably, a State's ability to exclude a provider is limited by § 1396a(a)(23)(A) and its requirement that Medicaid patients be afforded the freedom to choose any qualified and willing provider. *See Gee*, 862 F.3d at 465.

Thus, contrary to Defendant's suggestion, § 1396a(p)(1) does not permit a State to pass a law deeming a provider unqualified for reasons unrelated to professional competence to perform the services at issue and then to exclude the provider from its Medicaid program on the basis of

that law. *See Comm'r of Ind.*, 699 F.3d at 979-80. To hold otherwise would render the right conferred in § 1396a(a)(23)(A) meaningless.

As explained above, Defendant's termination of PPSAT from South Carolina's Medicaid program was not based on any alleged incompetence or inability of PPSAT to perform the medical services at issue. Rather, it was based on the fact that PPSAT performs abortions outside the Medicaid program. Because it is undisputed PPSAT is professionally competent to perform family planning services, Defendant's termination of PPSAT from South Carolina's Medicaid program violates § 1396a(a)(23)(A). Accordingly, the Court holds Ms. Edwards is likely to succeed on the merits of her Medicaid Act claim.

**B.     Irreparable Harm**

Ms. Edwards asserts she will suffer irreparable harm in the absence of preliminary relief because she is being deprived of her statutory right under § 1396a(a)(23)(A) to have the qualified and willing provider of her choice. She avers she is also suffering irreparable harm in the form of disruption of and reduced access to health care.

Defendant claims Ms. Edwards will suffer no harm without a preliminary injunction because she has no right to receive Medicaid services from a provider deemed unqualified by the State, such as PPSAT. Defendant reiterates its contention Ms. Edwards is unable to maintain a cause of action challenging Defendant's determination PPSAT is unqualified to provide Medicaid services. Defendant further suggests Ms. Edwards will suffer no harm because she can still obtain Medicaid services from PPSAT's physicians as long as they bill for such services outside of PPSAT.

The Court has no trouble concluding Ms. Edwards would suffer irreparable harm in the absence of a preliminary injunction because she would be deprived of her statutory right to select

13

the qualified and willing provider of her choice. Ms. Edwards is insured through Medicaid, ECF No. 5-3 ¶ 2, and she wants to continue receiving care from PPSAT, ECF No. 5-3 ¶ 17. Defendant's termination of PPSAT from South Carolina's Medicaid program is depriving Ms. Edwards of her statutory right to choose PPSAT as her provider, and deprivation of this right constitutes irreparable harm.

Defendant's arguments regarding Ms. Edwards' alleged lack of irreparable harm are without merit. As set forth above, the Court holds § 1396a(a)(23)(A) provides Medicaid patients such as Ms. Edwards a private right of action enforceable under § 1983, and Defendant's termination of PPSAT from South Carolina's Medicaid program violates § 1396a(a)(23)(A). Thus, the Court rejects Defendant's contention Ms. Edwards will suffer no irreparable harm because she has no right to receive Medicaid services from PPSAT and no ability to challenge Defendant's termination of PPSAT from the State's Medicaid program.

Defendant's claim Ms. Edwards may still obtain services from PPSAT's physicians as long as they bill for her services outside of PPSAT is likewise lacking in merit. Section 1396a(a)(23)(A) affords Ms. Edwards the right to obtain services from any qualified "institution, agency, community pharmacy, or person." Thus, Ms. Edwards has the right to choose PPSAT, not just its physicians, as her provider, and Defendant's termination of PPSAT from the State's Medicaid program deprives her of that right.

Accordingly, the Court holds Ms. Edwards has demonstrated she is likely to suffer irreparable harm in the absence of preliminary relief.

### C. Balancing of the Equities

Ms. Edwards insists the balance of the equities tips in her favor because she will suffer irreparable harm in the absence of a preliminary injunction, and Defendant would suffer no injury

if the Court were to issue a preliminary injunction. She explains Defendant would suffer no injury because the State would simply continue to reimburse PPSAT for Medicaid services as it has done for years.

Defendant disagrees the balance of the equities tips in Ms. Edwards' favor. Defendant claims Ms. Edwards and other PPSAT Medicaid patients can seek health care services elsewhere in the absence of injunctive relief. Furthermore, Defendant maintains he would in fact suffer an injury if injunctive relief were granted because, as revealed by Governor McMaster's Executive Order No. 2017-15 and S.C. Code Ann. § 43-5-1185, the State has a compelling interest in ensuring no State funds are used to pay for abortions or are provided to physicians or medical practices affiliated with abortion clinics. Defendant claims States funds would be used to subsidize abortions at PPSAT if Plaintiffs' requested injunction were issued, and, as evidence of this, Defendant cites to the testimony of PPSAT's CEO that PPSAT might have to reduce services and hours at its health centers without Medicaid reimbursements.

The Court holds the balance of the equities tips in Ms. Edwards' favor. As stated above, Ms. Edwards, as well as other PPSAT patients insured through Medicaid, will suffer irreparable harm in the absence of an injunction because they will be deprived of their statutory right to the qualified provider of their choice. This harm is significant and can have substantial negative effects, including a potential lack of access to health care. Contrary to Defendant's suggestion, it is immaterial whether Ms. Edwards can seek health care from another provider because she is entitled to the qualified provider of her choice under § 1396a(a)(23)(A).

The Court agrees with Ms. Edwards the State would suffer no harm if injunctive relief were granted. As Ms. Edwards points out, the State would simply have to continue to reimburse PPSAT for Medicaid services as it has done previously. Defendant's argument injunctive relief would

15

force it to subsidize abortions is without merit. As explained above, South Carolina's Medicaid program does not cover abortions except in narrow circumstances required by law, and PPSAT is reimbursed for Medicaid services on a fee-for-service basis. ECF No. 24-1 ¶¶ 2-3. Thus, PPSAT's inclusion in South Carolina's Medicaid program does not cause the State to subsidize abortions, and the fact PPSAT might have to reduce services and hours if it loses Medicaid patients fails to prove otherwise. Moreover, Defendant can have no legitimate interest in perpetuating circumstances contrary to law, and Defendant's termination of PPSAT from the Medicaid program violates § 1396a(a)(23)(A).

### D. The Public Interest

Ms. Edwards argues a preliminary injunction would serve the public interest of ensuring continued access to crucial health services for Medicaid patients. Defendant claims injunctive relief would be adverse to the public interest because it would require the State to subsidize abortions in violation of S.C. Code Ann. § 43-5-1185.

The Court has already rejected Defendant's claim a preliminary injunction would require the State to subsidize abortions, and the Court therefore rejects Defendant's argument injunctive relief is adverse to the public interest. The Court holds Plaintiffs' requested preliminary injunction would serve the public interest by preserving the statutory right of Ms. Edwards and other PPSAT patients insured through Medicaid to have the qualified provider of their choice. Injunctive relief further serves the public interest by helping to ensure affordable access to competent health care by some of South Carolina's neediest citizens.

In accordance with the above discussion, the Court holds Ms. Edwards has demonstrated she is likely to succeed on the merits of her Medicaid Act claim, she is likely to suffer irreparable harm in the absence of preliminary injunctive relief, the balance of equities tips in her favor, and

her requested injunction is in the public interest. The Court will therefore issue a preliminary injunction enjoining Defendant from terminating the Medicaid enrollment agreement of PPSAT during the pendency of this litigation.

Because the Court holds preliminary injunctive relief is appropriate and warranted for Ms. Edwards' Medicaid Act claim, the Court declines to analyze whether preliminary injunctive relief is appropriate for PPSAT's claim. The Court likewise declines to address the remaining arguments of the parties, as the Court's holdings articulated above are dispositive of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. *See Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*.").

## V. CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction is **GRANTED**. Defendant and his employees, agents, successors in office, and all others acting in concert with him in his official capacity as Director of the South Carolina Department of Health and Human Services are hereby enjoined from terminating the Medicaid enrollment agreement of Planned Parenthood South Atlantic during the pendency of this action. Plaintiffs are directed to post security in the amount of $1,000 with the Clerk of Court for the District of South Carolina by Tuesday, September 4, 2018.

17

**IT IS SO ORDERED.**

Signed this 28th day of August 2018 in Columbia, South Carolina.

s/ Mary Geiger Lewis  
MARY GEIGER LEWIS  
UNITED STATES DISTRICT JUDGE