UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

PLANNED PARENTHOOD SOUTH  }
ATLANTIC, et al.,          }
                           }
            Plaintiffs,    }
                           }
      v.                   }    Case No. 3:18-cv-2078-MGL
                           }
JOSHUA BAKER,              }
                           }
            Defendant.     }

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

For decades, Planned Parenthood South Atlantic ("PPSAT") and its predecessor organization have participated in South Carolina's Medicaid program, providing critically needed family planning and other preventive health services—90% of which are paid for by the federal government—to hundreds of low-income South Carolinians each year, including Plaintiff Julie Edwards. On July 13, 2018, Defendant Joshua Baker ("Defendant") abruptly and without warning terminated PPSAT from this program, solely because, in addition to Medicaid services, PPSAT also provides safe, legal abortions. This Court has held that Defendant's action violated the plain language and well-settled application of the Medicaid Act's Free Choice of Provider requirement. *See* Mem. Op. & Order Granting Pls.' Mot. for TRO & Prelim. Inj. ("PI Order") at 13, ECF No. 30. While Plaintiffs did not seek a preliminary injunction on their constitutional claims, Defendant's action also violated the Equal Protection and Due Process guarantees of the United States Constitution. *See* Compl. for Injunctive & Declaratory Relief ("Compl.") at 13, ECF No. 1.

Defendant has moved to dismiss Plaintiffs' Free Choice of Provider and constitutional claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) on the grounds that: Plaintiffs

1

do not have a right of action to bring their claims under 42 U.S.C. § 1983; Plaintiff Julie Edwards' claims are not ripe for adjudication; and Plaintiffs are required to exhaust administrative proceedings before asserting statutory claims in federal court, and/or have waived their right to a federal forum. In the course of ruling on Plaintiffs' preliminary injunction motion this Court has already rejected Defendant's argument, presented here under Rule 12(b)(6), that the Free Choice of Provider requirement is not enforceable under § 1983, as well as Defendant's argument, presented here under Rule 12(b)(1), that Plaintiffs are required to exhaust administrative remedies before bringing § 1983 claims in federal court, PI Order at 6–10, and Plaintiffs accordingly do not repeat their briefing on these points.[1] The argument below sets out why Defendant's standing and remaining exhaustion and waiver arguments under Rule 12(b)(1) also fail.

## ARGUMENT

### I. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be found. "A Rule 12(b)(1) motion to dismiss should be granted 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Balfour Beatty Infrastructure, Inc. v. Mayor & City Council of Balt.*, 855 F.3d 247, 251 (4th Cir. 2017) (quoting *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.,* 166 F.3d 642, 647 (4th Cir. 1999)).

---

[1] This Court held that "[a]s a general rule, a plaintiff bringing a suit pursuant to 42 U.S.C. § 1983 does not have to exhaust state administrative remedies before filing suit in federal court," and that while there are certain exceptions to this rule, the Medicaid Act does not provide one. PI Order at 9–10 (quoting *Talbot v. Lucy Corr Nursing Home*, 118 F.3d 215, 218 (4th Cir. 1997)). Accordingly, the Court found that "Ms. Edwards was not required to exhaust state administrative remedies prior to bringing this action." PI Order at 10. This holding applies equally to Plaintiffs' other statutory and constitutional claims, even though the Court did not need to reach these claims in its prior order.

## II. MS. EDWARDS HAS STANDING

Defendant argues that Ms. Edwards lacks standing because she has not yet suffered concrete injury and because her claims are not yet ripe for adjudication.[2] Specifically, he argues that her injury is not concrete because it is "based upon contingent future events," Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Br.") at 8, ECF No. 25-1, and that her claims are not ripe because "they should be resolved through the administrative process." *Id*. Defendant's arguments fail for the reasons recognized by numerous courts. *See Planned Parenthood Ariz. Inc. v. Betlach*, 727 F.3d 960 (9th Cir. 2013) (granting pre-termination relief), *cert. denied,* 571 U.S. 1198 (2014); *Planned Parenthood of Kan. & Mid-Mo. v. Andersen*, 882 F.3d 1205 (10th Cir. 2018) (same), *petition for cert. filed*, (U.S. Mar. 23, 2018) (No. 17-1340); *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445 (5th Cir. 2017) (same), *petition for cert. filed*, (U.S. May 1, 2018) (No. 17-1492); *see also Planned Parenthood Se., Inc. v. Bentley*, 141 F. Supp. 3d 1207 (M.D. Ala. 2015); *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962 (7th Cir. 2012), *cert. denied*, 569 U.S. 1004 (2013); *Planned Parenthood Se., Inc. v. Dzielak*, No. 3:16cv454-DPJ-FKB, 2016 WL 6127980 (S.D. Miss. Oct. 20, 2016), *appeal docketed*, No. 16-60773 (5th Cir. Nov. 21, 2016); *Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Smith*, 236 F. Supp. 3d 974 (W.D. Tex. 2017), *appeal docketed*, No. 17-50282 (5th Cir. Apr. 7, 2017).

### A. Ms. Edwards Has Alleged Sufficient Injury

Defendant argues that Ms. Edwards lacks standing to sue because she has not established "injury in fact." Def.'s Br. at 7–8. That argument is meritless.

---

[2] Defendant does not contest that Ms. Edwards meets the other requirements for standing: that the injury she alleges is traceable to Defendant and that the judicial relief she seeks would redress that injury.

3

To establish injury for standing, a plaintiff "may demonstrate an 'actual' 'invasion of a legally protected interest' that 'affect[s] the plaintiff in a personal and individual way.'" *See Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 454–55 (4th Cir. 2017) (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). Moreover, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013)); *see Gee*, 862 F.3d at 454 (quoting *Driehaus*, 134 S. Ct. at 2341) (in Free Choice of Provider context, citing this rule in rejecting defendant's standing arguments).

Here, as this Court held in granting a preliminary injunction, Ms. Edwards has a legally protected (and certainly "personal") interest in choosing her own Medicaid provider, and Defendant has unquestionably invaded that interest. *See* PI Order at 14 ("Defendant's termination of PPSAT from South Carolina's Medicaid program is depriving Ms. Edwards of her statutory right to choose PPSAT as her provider."). This Court also rejected Defendant's argument, repeated here in the Motion to Dismiss, that Ms. Edwards is not injured because she could receive care elsewhere from one of the physicians affiliated with PPSAT; as this Court concluded, that argument fails because, *inter alia*, "Ms. Edwards has the right to choose PPSAT, not just its physicians, as her provider." *Id.* By this same logic, she has alleged injury that is more than sufficient to confer standing.

Indeed, the Fifth and Tenth Circuits have expressly rejected the very standing arguments Defendant makes here. As the Tenth Circuit explained in *Andersen*, "[p]atients, in particular, 'need not wait to file suit until [the Providers are] forced to close [their] doors to them and all other Medicaid beneficiaries.'" *Andersen, 882 F.3d at 1217* (alterations in original) (quoting *Gee*, 862

4

F.3d at 455). Here, PPSAT has already been forced to turn away Medicaid-insured patients like Ms. Edwards. But for this Court's recent temporary injunction, Ms. Edwards, like other patients, would be deprived of her chosen provider. Thus there can be no question that she has shown the required injury to support standing.

### B. Ms. Edwards' Claims Are Ripe for Adjudication

Defendant also argues that Ms. Edwards' claims are not ripe because "they should be resolved through the administrative process." Def.'s Br. at 8. Defendant cites no authority to support this argument, which essentially rehashes arguments that this Court has already rejected in part, *see* PI Order at 9–10, and that Defendant also makes to support his position (addressed *infra* Part III) that this Court lacks subject matter jurisdiction over Plaintiff's claims. At any rate, claims are ripe if (1) they present issues fit for judicial decision, and (2) delay in judicial consideration would pose a hardship to plaintiffs. *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013) (citations omitted). A case is fit for decision when the "action in controversy is final and not dependent on future uncertainties." *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013) (quoting *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006)) (citing *Franks v. Ross*, 313 F.3d 184, 195 (4th Cir. 2002)). And "[a] case is generally ripe if any remaining questions are purely legal ones." *Gee, 862 F.3d at 456* (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583 (5th Cir. 1987)); *see also Miller*, 462 F.3d at 319. Applying these considerations, Ms. Edwards' claims are ripe.

Once a state moves to improperly terminate a Medicaid provider for reasons unrelated to that provider's qualifications, that action presents legal issues that are fit for judicial resolution. For example, in *Mosier*, the court found that the plaintiffs' claims were ripe, even prior to termination taking effect and "notwithstanding the option of an administrative appeal," because

5

the termination notices "represent[ed] concrete actions by the [defendant] that threatened to harm Plaintiffs by excluding [the plaintiffs] as Medicaid providers." *Planned Parenthood of Kan. & Mid-Mo. v. Mosier*, No. 16-2284-JAR-GLR, 2016 WL 3597457, at *9 (D. Kan. July 5, 2016), *aff'd in relevant part, Andersen*, 882 F.3d 1205. The Fifth Circuit recently reached the same conclusion, finding plaintiffs' claims ripe because: (1) "[t]he operative question on appeal is whether, as a matter of law, any of . . . [defendant's asserted grounds for termination] permit [defendant] to terminate PPGC's Medicaid provider agreement without violating Medicaid's free-choice-of-provider requirement"; and (2) "[t]he Individual Plaintiffs' injuries are 'sufficiently likely to happen to justify judicial intervention.'" *Gee*, 862 F.3d at 456 (quoting *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010)). This approach accords with the law of this circuit, which holds that a plaintiff need not pursue an administrative procedure to "ripen" her claims when the agency has already reached a "formalized administrative decision with concrete effects." *Pashby v. Delia*, 709 F.3d 307, 317 (4th Cir. 2013) (ripeness doctrine intended to avoid "premature adjudication" that would entangle the court "in abstract disagreements over administrative policies" (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967))).

Ms. Edwards' claims are ripe for the same reasons. The injury she alleges—denial of her right to freely choose her provider—is concrete, not abstract. And as in *Andersen* and *Gee*, her claims are purely legal, turning on the meaning of the Free Choice of Provider requirement. There is no factual dispute as to why Defendant terminated PPSAT; Defendant has conceded that the termination was based on Governor McMaster's directive that all abortion providers be terminated. *See* Def.'s Br. at 5. Finally, for the same reasons this Court found irreparable harm sufficient to warrant preliminary relief, Ms. Edwards would suffer hardship if her claims were not considered at this time. *Cf. Gee*, 862 F.3d at 456–457 (finding the hardship test met); *Andersen*, 882 F.3d at

1220 (same).

**III. PLAINTIFFS MAY BRING THEIR CLAIMS IN FEDERAL COURT WITHOUT EXHAUSTING ADMINISTRATIVE REMEDIES**

Defendant next argues that Plaintiffs' Complaint should be dismissed because Plaintiffs have (1) waived the right to pursue their claims in federal court, and (2) failed to exhaust their administrative remedies. *See* Def.'s Br. at 8–11. As this Court already has held, any administrative process available to Ms. Edwards was optional, not mandatory, and would have been futile here given the Governor's directive to terminate PPSAT. *See* PI Order at 9–10.[3] As this Court also held, the Medicaid Act does not "requir[e] the exhaustion of state administrative remedies prior to bringing a § 1983 suit for violation of the Act." PI Order at 10.

Defendant's only remaining argument is that PPSAT waived its right to sue in federal court by entering a Provider Agreement with the South Carolina Department of Health and Human Services ("SCDHHS"). This Court need not reach that argument given Ms. Edwards' clear standing. *See Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) ("[T]he Supreme Court has made it clear that 'the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.'" (quoting *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006))). At any rate, Defendant's argument fails because PPSAT's claims do not "arise under" its contract with SCDHHS, and, in any event, the forum selection clause is unenforceable as to the claims at issue here.

---

[3] "A permissive forum selection clause does not justify dismissal on the grounds that the plaintiff filed suit in a forum other than the one specified in the clause." *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir. 2018). Moreover, the Beneficiary Agreement could not possibly preclude Ms. Edwards from suing here as it only allows appeals for benefits or specific services denied, not for providers excluded from the network. *See* Def.'s Br. at 4.

**A. PPSAT Did Not Waive Its Right to Pursue Claims Under § 1983 in a Federal Forum**

Defendant argues that, in its Provider Agreement with SCDHHS, PPSAT contractually agreed that the "sole and exclusive remedy" for its claims under § 1983 would be "a hearing from SCDHHS." Def.'s Br. at 3, 8 (citing *Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 213 (4th Cir. 2007) (holding, in context of a dispute over reimbursement rates, that some statutory rights "can be limited by contract")). PPSAT's Provider Agreement with SCDHHS, however, places limits only on disputes that "aris[e] under" the terms of contract: "[F]or any dispute arising under this agreement, the provider shall have as his sole and exclusive remedy the right to request a hearing from SCDHHS within thirty (30) calendar days of the SCDHHS action which he believes himself aggrieved." Def.'s Br. at 3. PPSAT's claims arise under the Medicaid Act and the Constitution, not its Provider Agreement, and nothing in that agreement even bears on how these claims should be decided—let alone affords a remedy for them. Thus, this case is not controlled by *Pee Dee*, a routine dispute over reimbursement rates that the plaintiff conceded "*ar[ose] under* the terms of the contract." 509 F.3d at 209 n.7 (emphasis added).[4]

As this circuit has held in considering whether a similar contractual provision conferred agency jurisdiction, "administrative resolution of a given claim is only authorized if some other provision of the contract establishes an administrative remedy sufficient to afford full relief for the

---

[4] Defendant relies on a single unreported district court case, *Genesis Health Care, Inc. v. Soura*, No. 3:16-CV-03376-CMC, 2017 WL 698610, at *4 (D.S.C. Feb. 22, 2017), in which the court suggested that "Pee Dee Healthcare's concession that the claim arose under the contract" was not "necessary to enforcement of the contractual limitations." But as explained below, and in contrast to the routine fee disputes involved in *Pee Dee* and *Genesis* in which administrative remedies were available, it would be contrary to the public policy embedded in the Free Choice of Provider clause to allow states to insulate themselves from meaningful judicial review by requiring all participants to waive their right to a federal forum. *See* Part III.B.2., *infra*. In any event, *Genesis* (like *Pee Dee*) applies only to health care providers, not Ms. Edwards. Even if the Court were to find that PPSAT waived its rights, Ms. Edwards could still bring her Free Choice of Provider and Fourteenth Amendment claims, and PPSAT would retain third-party standing to assert the claims of its other patients. *See, e.g.*, *Singleton v. Wulff*, 428 U.S. 106, 112–16 (1976).

claim." *Washington Metro. Area Transit Auth. v. Buchart-Horn, Inc.*, 886 F.2d 733, 735 (4th Cir. 1989) (citing *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394 (1965)); *see also Crown Coat Front Co. v. United States*, 386 U.S. 503, 505–06 (1967) ("The 'arising under' claims subject to final administrative determination are those claims asserted under other clauses of the contract . . . ."). In other words, "[o]ther contractual provisions, by granting a contract administrator authority to afford some remedy for the quarrel, must in effect confer jurisdiction." *Buchart-Horn*, 866 F.2d at 735; *see also Rohr Indus., Inc. v. Washington Metro. Area Transit Auth.*, 720 F.2d 1319, 1323 (D.C. Cir. 1983) (holding that "it is now settled that the [dispute] clause extends only to controversies" that are "capable of complete resolution by a procedure specified in the contract" (quoting *Bethlehem Steel Corp. v. Grace Line, Inc.,* 416 F.2d 1096, 1101 (D.C. Cir. 1969))); *Edward R. Marden Corp. v. United States*, 442 F.2d 364, 368 (Ct. Cl. 1971) (applying *Utah*, 384 U.S. 394, to hold that "only those claims for which an adjustment is specifically provided by the contract" are "determinable administratively under the Disputes clause").

Here, Defendant has all but acknowledged that this dispute does not arise out of any provision of the contract. He has conceded that this termination was not a for-cause termination as laid out in that contract (under which PPSAT would have been entitled to thirty-days advance notice), or really any sort of "agency determination" at all, but rather a *sui generis* termination at the external direction of the Governor. Def.'s Mem. of Law in Opp'n to Pls.' Mot. for TRO & Prelim. Inj. at 10 n.1, ECF No. 16 ("This is not a termination for cause under the enrollment agreement; rather this was an immediate termination upon a provider being deemed unqualified and is *analogous* to instances when SCDHHS immediately terminates the enrollment agreement of a provider enrolled in Medicaid upon exclusion from Medicare" (emphasis added)); *compare* S.C. Code Ann. Regs. 126-150(B) (providing for administrative review of "Agency

9

determinations").

Moreover, given Defendant's position that Governor McMaster's Executive Order 2018-21 "result[s] in [PPSAT] no longer being qualified to provide services to Medicaid beneficiaries," Termination Letter, Ex. D to Decl. of Jenny Black in Supp. of Pls.' Mot. for TRO & Prelim. Inj, ECF No. 5-2, it is plain that there is no administrative remedy available to PPSAT. *Cf.* PI Order at 10 (in context of holding that Ms. Edwards was not required to exhaust her administrative remedies, noting that any such appeal "would be futile given the clear directive in in Governor McMaster's Executive Order No. 2018-21"); *Gibson v. Berryhill*, 411 U.S. 564, at 575 n.14 (1973) ("State administrative remedies have also been held inadequate . . . where the state administrative body was found to be biased or to have predetermined the issue before it.").[5]

Thus, under *Pee Dee* and *Buchart-Horn,* this controversy does not "arise under" PPSAT's Provider Agreement and is not subject to that agreement's forum selection clause.

### B. In the Alternative, the Forum Selection Clause Is Unenforceable

Even if the Court finds that the instant case "arises under" the Provider Agreement, it should nevertheless hold that the forum selection clause is unenforceable because (1) PPSAT did not voluntarily waive its right to sue in a federal forum as to the claims at issue here, and (2) enforcement of the clause would contravene public policy interests.

#### 1. Voluntariness

First, the forum selection clause was not a "voluntary, deliberate, and informed" waiver as

---

[5] Indeed, to the degree Defendant is suggesting that Plaintiffs are not entitled to a federal forum for their *constitutional* claims because they are required to instead bring those claims as part of an administrative appeal, that argument is especially absurd because the SCDHHS appeals process does not appear to contemplate constitutional claims. To the contrary, the regulations defining SCDHHS's appeals procedures explain that an "[a]ppeal" is "[t]he formal process of review and adjudication of Agency determinations, which shall be afforded to any person possessing a right to appeal pursuant to *statutory, regulatory and/or contractual law*." S.C. Code Ann. Regs. 126-150(B) (emphasis added).

10

applied to the claims at issue here. *Pee Dee*, 509 F.3d at 213 (quoting *Bushnell v. Rossetti*, 750 F.2d 298, 301–02 (4th Cir. 1984)); *see id.* ("This court has applied a voluntariness standard to determine the enforceability of agreements in which a party releases possible § 1983 claims."). In *Pee Dee*, there was little question that the provider had voluntarily waived its right to bring a reimbursement rates dispute to federal court where: (1) the dispute plainly "arose out of" the contract; (2) it was the kind of dispute generally handled in the administrative process; and (3) the plaintiff had in fact previously raised the same dispute with the agency—unsuccessfully—and yet had continued signing the provider agreement, *Pee Dee*, 509 F.3d at 209 n.9. Here, by stark contrast, the dispute concerns an agency action taken outside the normal administrative process, at the Governor's directive, and Plaintiffs raise federal statutory and constitutional claims of the sort not typically handled by agencies. No Medicaid provider signing this agreement would understand itself to be waiving the right to a federal forum to raise these claims. This Court should find the forum selection clause unenforceable on this ground and hold that PPSAT, like Ms. Edwards, may bring its Free Choice of Provider and Fourteenth Amendment claims in federal court.

   2. **Public Policy**

Further, public policy considerations counsel against enforcement of the forum selection clause. "[T]he controlling principle for determining whether a waiver clause is unenforceable is 'if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement.'" *Pee Dee*, 509 F.3d at 212 (quoting *Town of Newton v. Rumery,* 480 U.S. 386, 392 (1987)). Whether an agreement violates public policy is decided on a case-by-case basis, *see Town of Newton,* 480 U.S. at 392, and depends on whether the policy "is 'explicit,' 'well defined and dominant,' and 'ascertain[able] by reference to the laws and legal precedents and not from the general considerations of supposed public interests,'" *L & E Corp. v. Days Inn*

*of Am., Inc.*, 992 F.2d 55, 58 (4th Cir. 1993) (alteration in original) (quoting *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983)).

Allowing the State to insulate its actions from meaningful judicial review would contravene the public policy embedded in the Medicaid Act's Free Choice of Provider clause: that low-income patients, who already face numerous barriers to care, should be able to seek care from any provider who is qualified and willing to participate in Medicaid. In *Pee Dee*, the court found no public policy reason not to enforce the forum selection clause in a routine rate dispute, explaining that "Medicaid disputes are commonly heard in state administrative tribunals and no federal policy bars state courts from hearing federal claims." 509 F.3d at 214. But this case is not a run-of-the-mill reimbursement dispute like that in *Pee Dee* (and *Genesis*), and the public policy at issue implicates more than just federalism.

Here, rather, Plaintiffs challenge a law improperly excluding an entire class of providers from Medicaid because of the provision of constitutionally-protected abortion services, thereby limiting beneficiary choice, and the State seeks to limit Plaintiffs to an administrative forum where their claims would be adjudicated by the very department that created the policy. As this Court held, such an appeal would be futile. *See* PI Order at 10; *see also supra* Part III.A.[6] This Court noted that it should not "permit a State to pass a law deeming a provider unqualified for reasons unrelated to professional competence to perform the services at issue and then to exclude the

---

[6] Moreover, notwithstanding Defendant's inexplicable assertion that "the allegations made by Plaintiffs are the type of issues that the [Defendant's] Division of Appeals and Hearings was specifically designed and created to rule upon," Def.'s Br. at 11, Defendant cannot explain what expertise it has in deciding the pure legal issues of whether terminating PPSAT from the Medicaid program solely because it provides abortion services outside the context of that program violates the Free Choice of Provider requirement, and/or Plaintiffs' constitutional rights.

12

provider from its Medicaid program on the basis of that law," PI Order at 12–13; it should certainly not then permit the State to insulate that law from meaningful judicial review. "To hold otherwise would render the right conferred in § 1396a(a)(23)(A) meaningless." PI Order at 13; *cf. Comm'r of Ind.*, 699 F.3d at 979–80; *Gee*, 862 F.3d at 465.

Significantly, Plaintiffs bring two constitutional claims in addition to their Medicaid Act claim, further tipping the balance against enforcement of the contractual forum selection clause (if those claims were understood to "arise" under the language of the Provider Agreement, which they should not be). Both *Pee Dee* and *Genesis* expressly distinguish constitutional claims with respect to the public policy inquiry. *See Pee Dee,* 509 F.3d at 213 (explaining that the "waiver of a constitutional right" would "implicate the public policy concerns noted in *Town of Newton*"); *Genesis*, 2017 WL 698610, at *3 (emphasizing that *Pee Dee* held that the "contract did 'not involve a waiver of a constitutional right, but only the ancillary right to select a federal forum to pursue a statutory right'" (quoting *Pee Dee*, 509 F.3d at 213)); *see also Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1397 (9th Cir. 1991) ("[B]ecause constitutional rights are generally more fundamental than statutory rights, a stricter rule than the one embodied by the [*Town of Newton*] balancing test may be appropriate in such cases.").

For all these reasons, even if the forum selection clause applied to Plaintiffs' claims, it would be unenforceable under "explicit" and "well defined" public policy considerations.

## CONCLUSION

For these reasons, this Court should deny Defendant's motion and allow this case to proceed to the merits.

Respectfully submitted this 4th day of September, 2018:

*/s/ Malissa Burnette*

13

M. Malissa Burnette (Fed. Bar. No. 1616)
Kathleen McDaniel  (Fed. Bar. No. 10139)
Burnette Shutt & McDaniel, PA
912 Lady Street, Second Floor
Columbia, SC 29201
803-904-7913
mburnette@burnetteshutt.law
kmcdaniel@burnetteshutt.law

Jennifer Sandman*
Planned Parenthood Federation of America
123 William St., 9th Floor
New York, NY 10038
(212) 261-4584
jennifer.sandman@ppfa.org

Alice Clapman*
Planned Parenthood Federation of America
1110 Vermont Ave., NW, Suite 300
Washington, DC 20005
(202) 973-4862
alice.clapman@ppfa.org

Attorneys for the Plaintiffs

*Admitted pro hac vice*