## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| PLANNED PARENTHOOD SOUTH ATLANTIC, et al., | } } } | |
| Plaintiffs, | } } | Case No. 3:18-cv-2078-MGL |
| v. | } } | |
| JOSHUA BAKER, | } } | |
| Defendant. | } } | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This case challenges defendant Joshua Baker's unlawful decision to terminate Planned Parenthood South Atlantic ("PPSAT") from the South Carolina Medicaid program. PPSAT and its predecessor organization have participated in Medicaid for several decades, and PPSAT currently serves hundreds of beneficiaries each year, including Plaintiff Julie Edwards. It is undisputed that Defendant terminated PPSAT from Medicaid not because of any issue with the quality of its healthcare services, but solely because, outside of Medicaid, PPSAT also provides lawful and constitutionally-protected abortion care.

On August 28, 2018, this Court granted Plaintiffs' motion for a preliminary injunction, on the ground that Ms. Edwards was likely to succeed in showing that, by terminating PPSAT, Defendant violated her right under the Medicaid Act's free-choice-of-provider provision ("free-choice requirement"), which requires states to provide that "any individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . , who undertakes to provide him

such services . . . " 42 U.S.C. § 1396a(a)(23)(A). Defendant appealed, and on October 29, 2019, the U.S. Court of Appeals for the Fourth Circuit issued its Opinion, *Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687, 690 (4th Cir. 2019), affirming that opinion.

Although these two rulings applied the likelihood-of-success-on-the-merits standard appropriate to motions for temporary relief, they included reasoning and holdings under which Plaintiffs are not only likely but in fact certain to prevail as a matter of law. *See Baker*, 941 F.3d at 691 (holding that the Medicaid Act "bars states from excluding providers for reasons unrelated to professional competency"); *Planned Parenthood S. Atl. v. Baker*, 326 F. Supp. 3d 39, 48 (D.S.C. 2018) (holding that "Defendant's termination of PPSAT from South Carolina's Medicaid program violates § 1396a(a)(23)(A)"); *see also Planned Parenthood Ariz. Inc. v. Betlach*, 727 F.3d 960 (9th Cir. 2013) (affirming summary judgment that Arizona violated Medicaid Act by excluding abortion providers from Medicaid).

There are no material facts in dispute that can disrupt these findings, which are dispositive of Plaintiffs' claim. Accordingly, Plaintiffs are entitled to summary judgment.

## STATEMENT OF UNDISPUTED FACTS

For decades, PPSAT and its predecessor organization have treated patients insured through Medicaid at its health centers in Charleston and Columbia. Decl. Jenny Black Supp. Pls.' Mot. TRO & Prelim. Inj. ("Black Decl.") ¶¶ 3–4, ECF No. 5-2. PPSAT provides a range of family planning, reproductive health, and preventive care services, including well-woman exams; contraception (including long-acting reversible contraception or "LARC") and contraceptive counseling; hormonal counseling; screening for breast cancer; screening and treatment for cervical cancer and sexually transmitted infections ("STIs"), including human papillomavirus ("HPV") vaccines; pregnancy testing and counseling; physical exams; and screening for conditions such as diabetes, depression, anemia, high cholesterol, thyroid disorders, and high blood pressure. *Id.* ¶ 5.

PPSAT also performs abortions at these health centers, but South Carolina Medicaid does not reimburse PPSAT for any of these abortions except under limited circumstances as required by federal law. *Id.* ¶ 6. Plaintiff Julie Edwards is a South Carolina resident insured through Medicaid who has been treated at PPSAT's Columbia location and intends to continue to seek treatment there. Decl. Julie Edwards Supp. Pls.' Mot. TRO & Prelim. Inj. ¶¶ 11–12, 15 ("Edwards Decl."), ECF No. 5-3.

On August 24, 2017, Governor Henry McMaster directed the South Carolina Department of Health and Human Services ("DHHS"):

> to take any and all necessary actions, as detailed herein and to the extent permitted by law, to cease providing State or local funds, whether via grant, contract, state-administered federal funds, or any other form, to any physician or professional medical practice affiliated with an abortion clinic and operating concurrently with and in the same physical, geographic location or footprint as an abortion clinic.

S.C. Exec. Order No. 2017-15 (Aug. 24, 2017), attached to Black Decl. as Exhibit A. On July 5, 2018, "to prevent taxpayer dollars from directly or indirectly subsidizing abortion providers like Planned Parenthood," the Governor vetoed over fifteen million dollars in family planning funds, none of it directed to abortion (and despite that only a small portion of this money went to Planned Parenthood). Letter from Henry McMaster, Governor, State of S.C., to S.C. General Assembly (July 5, 2018), attached to Black Decl. as Exhibit B.

A week later, on July 13, he issued Executive Order 2018-21, which directed DHHS to divert other funds to continue the family planning program which funding he had just cut. In this same order, the Governor also directed DHHS to "deem" all abortion clinics and any affiliated physicians "unqualified," and to "immediately terminate them upon due notice and deny any future such provider enrollment applications for the same." S.C. Exec. Order No. 2018-21 (July 13, 2018),

attached to Black Decl. as Exhibit C.[1] On that same day, the Department notified PPSAT that "[t]he Governor's actions result in Planned Parenthood no longer being qualified to provide services to Medicaid beneficiaries" and that it was terminating PPSAT immediately, with no prior warning to PPSAT or its patients and without any right to administrative hearing before termination. Termination Letter from Amanda Q. Williams, Health Servs. Acting Program Dir., DHHS Divs. of Health Servs., Operations & Clinical Quality to PPSAT (July 13, 2018), attached to Black Decl. as Exhibit D.

Defendant does not dispute that PPSAT is professionally competent to perform the medical services at issue in this case, but claims that nonetheless the Medicaid Act gives him the absolute authority to "deem" PPSAT "unqualified" solely because the Governor directed him to do so. Brief for Defendant-Appellant at 13, 32, *Baker*, 941 F.3d 687.

## ARGUMENT

As this Court and the Fourth Circuit previously found in granting Plaintiffs' motion for a preliminary injunction, the Medicaid Act affords beneficiaries such as Ms. Edwards a right to choose their own qualified provider and authorizes them to enforce that right pursuant to 42 U.S.C. § 1983, and Defendant violated this right when he terminated PPSAT from Medicaid.

## I. The Medicaid Act Affords Beneficiaries an Individually Enforceable Right to Choose Their Own Provider

Medicaid is a cooperative federal-state program through which the federal government provides financial aid to states that furnish medical assistance to eligible low-income individuals. *See* 42 U.S.C. § 1396a *et seq.*; *Atkins v. Rivera*, 477 U.S. 154, 156 (1986). "State participation is voluntary; but once a State elects to join the program, it must administer a state plan that meets

---

[1] Under South Carolina law, the term "abortion clinic" refers to any "[f]acility in which any second trimester or five or more first trimester abortions are performed in a month." S.C. Code Ann. § 44-41-75.

federal requirements." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 433 (2004). South Carolina participates in the Medicaid program and is therefore bound by all of its requirements. One of these is the free-choice requirement, which specifies that state plans "must" provide that "any individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . , who undertakes to provide him such services . . . " 42 U.S.C. § 1396a(a); *id*. at § 1396a(a)(23)(A); 42 C.F.R. § 431.51(a)(1) (recipients "may obtain services from any qualified Medicaid provider that undertakes to provide the services to them"); *see also* 42 C.F.R. § 431.51(b).

Plaintiffs brought claims under the free-choice requirement, and Defendant challenged whether the Medicaid Act authorizes individual beneficiaries such as Ms. Edwards to enforce this provision. Defs.' Mem. Law Opp'n Pls.' Mot. TRO & Prelim. Inj. at 5–10, ECF No. 16. This Court concluded that it does. *Baker*, 326 F. Supp. 3d at 46. The Fourth Circuit affirmed, joining the overwhelming majority of its sister circuits that have reached this same conclusion. *Baker*, 941 F.3d at 696–700; *see also Planned Parenthood of Kan. & Mid-Mo. v. Andersen*, 882 F.3d 1205 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 638 (Mem.) (2018); *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445 (5th Cir. 2017), *cert denied*, 139 S. Ct. 408 (Mem.) (2018); *Betlach*, 727 F.3d 960 (9th Cir. 2013), *cert. denied*, 571 U.S. 1198 (2014); *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962 (7th Cir. 2012), *cert. denied*, 569 U.S. 1004 (2013); *Harris v. Olszewski*, 442 F.3d 456 (6th Cir. 2006); *but see Does v. Gillespie*, 867 F.3d 1034 (8th Cir. 2017).

This overwhelming consensus that the free-choice requirement is individually enforceable stems from a straightforward application of the three-part test laid out in *Blessing v. Freestone*, 520 U.S. 329 (1997). As set forth at greater length in *Baker*, 326 F. Supp. 3d at 44–46, and *Baker*,

941 F.3d at 696–700, the free-choice requirement is enforceable under *Blessing* because it is 1) individually focused, 2) sufficiently clear to be capable of judicial administration, and 3) couched in mandatory, rather than precatory, terms. *Baker*, 941 F.3d at 696–700 (quoting *Blessing*, 520 U.S. at 340–41). It is individually focused in that its terms require states to allow "any individual eligible for medical assistance" to freely choose any willing, qualified provider. *Id*. at 696–97. It is judicially administrable because courts are more than capable of determining whether a state's justification for excluding a provider is related to that provider's professional competence. *Id*. at 697. And it is "mandatory," in that Congress provided that states "must" afford beneficiaries this freedom. *Id*. at 697–98. Indeed, as the Fourth Circuit concluded, "[i]t is difficult to imagine a clearer or more affirmative directive" than the free-choice requirement. *Id*. at 694.

Under *Blessing*, a provision that meets these three criteria is enforceable unless Congress has expressly or implicitly foreclosed private enforcement. *Id*. at 696. Nowhere has Congress expressly foreclosed individual enforcement of the free-choice requirement, nor is "the Medicaid Act's enforcement scheme . . . sufficiently 'comprehensive' to [implicitly] foreclose" such enforcement. *Id*. at 698. There was nothing in this Court's or the Fourth Circuit's opinion on this issue that related to an issue of fact, must less a material, disputed one. Thus, Ms. Edwards has a right of action to challenge Defendant's exclusion of PPSAT from Medicaid. *Id*. at 699–700.

## II. Defendant Violated the Free-Choice Requirement

Turning to the substance of Ms. Edwards' claim, Plaintiffs are entitled to summary judgment because this Court and the Fourth Circuit have already determined, as a matter of law, that Defendant violated the free-choice requirement by excluding PPSAT from Medicaid for reasons that are admittedly unrelated to its "qualifi[cations] to perform the service or services required," 42 U.S.C. § 1396a(a)(23)(A). *See generally Baker*, 326 F. Supp. 3d at 48; *Baker*, 941 F.3d at 701–06.

6

The free-choice requirement speaks in absolute terms: states "must" allow "any" Medicaid beneficiary to choose "any" willing provider who is "qualified to perform the service or services required." 42 U.S.C. § 1396a(a); *id.* § 1396a(a)(23)(A). As the U.S. Supreme Court has explained, this language gives beneficiaries "an absolute right" to choose any qualified provider "without government interference." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 785 (1980). As the Fourth Circuit and four other federal courts of appeals have unanimously found, the free-choice requirement is "subject to two criteria: (1) the provider must be 'qualified to perform the service or services required,' and (2) the provider must 'undertake[] to provide [the recipient] such services.'" *Baker*, 941 F.3d at 697 (quoting 42 U.S.C. § 1396a(a)(23)); *accord Betlach*, 727 F.3d at 969; *Andersen*, 882 F.3d 1205; *Gee*, 862 F.3d 445; *Comm'r of Ind.*, 699 F.3d at 978; *see also Bentley*, 141 F. Supp. 3d at 1217; 42 C.F.R. § 431.51(b)(1).

As for what it means for a provider to be "qualified," the Fourth Circuit found two clear benchmarks: first, the statutory phrase in which this term is embedded, i.e. "qualified *to perform the service or services required*," *Baker*, 941 F.3d at 701–02; and second, another provision of the Medicaid Act, 42 U.S.C. § 1396a(p)(1), which "work[s] in tandem" with the free-choice requirement by authorizing states to exclude providers for failing to meet "standards that relate to providers' ability to practice in a professionally competent manner," *id.* at 702, 704. Based on these benchmarks, the Fourth Circuit found that Congress plainly intended to protect patient choice among all professionally competent providers willing to participate in Medicaid. *Id.* at 702–703; *see also Andersen*, 882 F.3d at 1230 (quoting *Gee*, 862 F.2d at 462); *Gee*, 862 F.3d at 462, 465 (quoting *Comm'r of Ind.*, 699 F.3d at 968); *Betlach*, 727 F.3d at 969 (reading "qualified" in § 1396a(a)(23) to mean "having an officially recognized qualification to practice as a member of a particular profession; fit, competent." (quoting *qualified*, Oxford English Dictionary (3d ed.

2007))); *Comm'r of Ind.*, 699 F.3d at 968 ("In this context, 'qualified' means fit to provide the necessary medical services—that is, capable of performing the needed medical services in a professionally competent, safe, legal, and ethical manner."); *Bentley*, 141 F. Supp. 3d at 1221 (qualifications must relate to "medical competency or legal and ethical propriety" (quoting *Betlach*, 727 F.3d at 972)).

As the Fourth Circuit recognized, nowhere has Defendant claimed that PPSAT is professionally unqualified. *Baker*, 941 F.3d at 702. To the contrary, he has simply carried out Governor McMaster's promise to punish PPSAT for providing safe, legal, and constitutionally-protected abortion services (some of which the Medicaid Act actually *requires* states to fund). As the Fourth Circuit put it, if states were allowed to exclude providers for reasons so wholly unrelated to their professional competence, that would "strip the free-choice-of-provider provision of all meaning." *Id.* at 703; *accord Andersen*, 882 F.3d at 1236 (attempt to terminate Planned Parenthood impermissible where State "is seeking to do exactly what [other circuits] warned against: 'simply labeling any exclusionary rule as a "qualification"' to evade the mandate of the free-choice-of-provider requirement." (alterations in original) (citations omitted)); *Gee*, 862 F.3d at 466 ("[A]s explained by the Ninth Circuit, a state cannot 'determine for any reason that a provider is not qualified for Medicaid purposes, even if the provider *is* otherwise legally qualified, through training and licensure, to provide the requisite medical services within the state.'" (quoting *Betlach*, 727 F.3d at 970)); *Betlach*, 727 F.3d at 963 (impermissible under free-choice requirement to "preclud[e] Medicaid patients from using medical providers concededly qualified to perform family planning services to patients . . . solely on the basis that those providers separately perform privately funded, legal abortions."); *Comm'r of Ind.*, 699 F.3d at 978 (rejecting State's argument that it may deem providers unqualified because they provide abortions; "[i]f the states are free to

set any qualifications they want—no matter how unrelated to the provider's fitness to treat Medicaid patients—then the free-choice-of-provider requirement could be easily undermined by simply labeling any exclusionary rule as a 'qualification.'").

For these reasons, it has already been established as a matter of law that Defendant violated the Medicaid Act when he terminated PPSAT from Medicaid admittedly for reasons unrelated to its professional competence to provide Medicaid-covered medical services. On this basis, Plaintiffs are entitled to Summary Judgment and permanent declaratory and injunctive relief.[2]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment should be granted. This Court should 1) issue a declaratory judgment that Defendant's decision to terminate PPSAT from Medicaid violates the Medicaid Act and is therefore void and of no effect; and 2) issue a permanent injunction enjoining Defendant and his agents, employees, appointees, delegates, and successors from terminating PPSAT from Medicaid based on PPSAT's lawful provision of abortion care or for any other reason unrelated to its professional competence to provide medical care.

---

[2] Plaintiffs have also brought constitutional claims that their termination from the Medicaid program solely for providing abortion services impermissibly treats PPSAT and its patients differently than other Medicaid providers and their patients, and penalizes PPSAT for the provision of constitutionally-protected abortion services, in violation of the Fourteenth Amendment. *See* Compl. Injunctive & Declaratory Relief—Class Action ¶¶ 49–52. It is not necessary for this Court to reach these claims, as this Court and the Fourth Circuit have already resolved the merits of Ms. Edwards' Medicaid Act claim in her favor. *See Norfolk S. Ry. Co. v. City of Alexandria,* 608 F.3d 150, 156–157 (4th Cir. 2010) ("[T]he principle of constitutional avoidance . . . requires the federal courts to strive to avoid rendering constitutional rulings unless absolutely necessary."); *Bell Atl. Md., Inc. v. Prince George's Cty.,* 212 F.3d 863, 865 (4th Cir. 2000) ("[C]ourts should avoid deciding constitutional questions unless they are essential to the disposition of a case."); *see also Strawser v. Atkins,* 290 F.3d 720, 730 (4th Cir. 2002); (holding that courts "will not decide a constitutional question . . . if another ground adequately disposes of the controversy.").

Respectfully submitted this 31st day of January, 2020:

/s/ Malissa Burnette
M. Malissa Burnette (Fed. Bar. No. 1616)
Kathleen McDaniel (Fed. Bar. No. 10139)
Burnette Shutt & McDaniel, PA
912 Lady Street, Second Floor
Columbia, SC 29201
803-904-7913
mburnette@burnetteshutt.law
kmcdaniel@burnetteshutt.law

Jennifer Sandman*
Planned Parenthood Federation of America
123 William St., 9th Floor
New York, NY 10038
(212) 261-4584
jennifer.sandman@ppfa.org

Alice Clapman*
Planned Parenthood Federation of America
1110 Vermont Ave., NW, Suite 300
Washington, DC 20005
(202) 973-4862
alice.clapman@ppfa.org

Attorneys for the Plaintiffs

* Admitted pro hac vice