# EXHIBIT 1

*Notice of Appeal to SCDHHS Division of Appeals and Hearings*



**Kathleen McDaniel - Partner**
803-907-7913
kmcdaniel@burnetteshutt.law

August 13, 2018

**RECEIVED**
AUG 15 2018
SCDHHS APPEALS

**VIA Hand Delivery**
**And VIA U.S. Mail**
Appeals and Hearings
Department of Health and Human Services
3220 Two Notch Road
Columbia, South Carolina 29203
Post Office Box 8206
Columbia, South Carolina 29202-8206

> Re: **Notice of Appeal from Termination of Planned Parenthood South Atlantic**
> **Pharmacy Medicaid Id. #: 715572**
> **NPI #: 1497049555**
> **Physician Group Medicaid Id. #: 143724**
> **NPI #: 1851438147**

Dear Sir or Ma'am:

Planned Parenthood South Atlantic ("PPSAT") submits this Notice of Appeal from the immediate termination of its status as a Medicaid provider on July 13, 2018.

The jurisdictional basis for this appeal is S.C. Code Ann. 44-6-190 and S.C. Code Ann. Regs. 126-152.

The issue in contest stems from Governor Henry McMaster's directive to South Carolina Department of Health and Human Services ("SCDHHS") to terminate PPSAT as a Medicaid provider. The history of that directive and subsequent termination is as follows. On July 5, 2018, "to prevent taxpayer dollars from directly or indirectly subsidizing abortion providers like Planned Parenthood," the Governor vetoed over 15 million dollars in family planning Medicaid funds, none of it directed to abortion. (**Attachment 1**, Letter from Henry McMaster, Governor, State of S.C., to S.C. General Assembly (July 5, 2018).)

A week later, on July 13, Governor McMaster issued Executive Order 2018-21, which directed SCDHHS to "deem" all abortion clinics and any affiliated physicians "unqualified" and to "immediately terminate them upon due notice and deny any future such provider enrollment applications for the same." (**Attachment 2**, S.C. Exec. Order No. 2018-21 (July 13, 2018).) On that same day, SCDHHS notified PPSAT that "[t]he Governor's actions result in Planned Parenthood no longer being qualified to provide services to Medicaid beneficiaries" and that it was terminating PPSAT effective immediately. (**Attachment 3**, Termination Letter from Amanda Q. Williams, Health Servs.

----------------

Acting Program Dir., SCDHHS Divs. of Health Servs.) It is from this Termination Letter that PPSAT takes this appeal.

This termination is without any basis in law. *See, e.g.,* S.C. Code Ann. Regs. 126-400 *et seq.* (setting forth grounds for sanctions, including termination); S.C. Code Ann. Regs. 126-300 (providing that services are subject to procedural requirements described in the provider manuals); SCDHHS Healthy Connections Provider Enrollment Manual 2-3 to 2-5 (March 1, 2018) (setting forth grounds for provider termination). Moreover, the immediate effective date of the termination violated the terms of SCDHHS's agreement with PPSAT. Participation and Payment Agreement, https://www.scdhhs.gov/sites/default/files/Participation%20%26%20Payment%20Agreement%20July%202017.pdf (requiring 30 days written notice of termination).

Thank you for your consideration of this matter. If you need further information, please contact me at your convenience.

With kind regards, I am

Sincerely,

Kathleen M. McDaniel

Kathleen McDaniel

[KMM/gbl]

Enclosures: Attachments 1-3

cc: Amanda Q. Williams, SCDHHS, Office of Health Programs

# ATTACHMENT 1



**HENRY MCMASTER**
GOVERNOR

July 5, 2018

Dear Mr. Speaker and Members of the General Assembly,

I am vetoing and returning without my approval certain line items in R293, H. 4950, the FY 2018-19 General Appropriations Act.

South Carolina is winning. Since January 2017, we have announced nearly 21,000 jobs and over $6 billion in new capital investment. Our unemployment rate is at its lowest since 2000. And, with more and more companies moving here every month, starting and expanding, we continue to see record numbers of citizens who are gainfully employed and enjoying the new prosperity of the Palmetto State.

In that same timeframe, the General Assembly has done a great deal to address the many pressing issues which confront us. This year, you approved a ballot measure to bring accountability to our education system by making the Superintendent of Education a Cabinet-level position. And you passed an array of anti-opioid bills to combat this epidemic across the spectrum of law enforcement, education, health care and more.

This budget includes much that will keep South Carolina on the right track, including a number of provisions aligned with proposals from my Executive Budget. I applaud the General Assembly for directing funds to hire more school resource officers to keep our children safe. I thank you for taking steps to protect the rule of law by banning sanctuary cities, and I agree wholeheartedly that consolidating administrative functions for at-risk school districts is an important step toward a shared services model that will allow us to save money and reinvest it into our classrooms. Last, but certainly not least, I commend you for establishing a process to explore the sale of Santee Cooper – the only way to get permanent relief for the ratepayers of South Carolina.

At the same time, this budget takes an unprecedented step away from public transparency and accountability in just one area: higher education. At first glance, the total amount of state appropriated funds and "other funds" authorized in this budget bill appears to have been reduced by $2.46 billion from last year's bill. But, upon closer examination, the reason for this reduction becomes clear: $3.45 billion in higher education "other funds" spending authorization has been completely removed from the state budget lines for each of our public universities, colleges and

technical schools and taken offline. In years past, this spending authorization in the budget has allowed the public to see just how much each institution receives and spends from funds generated by tuition, donations, grants, athletic department revenues, housing and other activities. Removing higher education institutions from the transparency provided by the normal appropriations process, in which every other state agency participates, sends the wrong message to the people of this state who, in truth, are the owners of our public colleges and universities.

As stewards of the public trust, we must always be tireless advocates of government accountability and transparency. The vetoes below reflect these twin responsibilities and specify instances in which the legislature has acted unwisely and hastily with taxpayer dollars by directing public money to private interests or earmarking funds for parochial projects which serve little or no public interest and should be considered locally.

I urge the General Assembly to thoughtfully consider each of these vetoes and promptly sustain them on behalf of the people of this state.

## Housekeeping

| | |
|---|---|
| Veto 1 | Part 1B, Page 334, Section 32, Department of Vocational Rehabilitation – Proviso 32.7, VR: Licensing Requirements for Disability Examiners |
| Veto 2 | Part 1B, Page 374, Section 53, S.C. Conservation Bank – Proviso 53.1, CB: Conservation Bank Trust Fund |
| Veto 3 | Part 1B, Page 403, Section 81, Department of Labor, Licensing and Regulation – Proviso 81.13, LLR: Amusement Park Rides |
| Veto 4 | Part 1B, Page 434, Section 102, Revenue and Fiscal Affairs Office – Proviso 102.6, RFAO: 911 Advisory Committee |
| Veto 5 | Part 1B, Page 439-440, Section 108, Public Employee Benefit Authority – Proviso 108.13, PEBA: Non-Revocation of Beneficiary Designations |
| Veto 6 | Part 1B, Page 440, Section 108, Public Employee Benefit Authority – Proviso 108.14, PEBA: Removal of Notarization Requirement for Retirement Systems |
| Veto 7 | Part 1B, Page 440, Section 108, Public Employee Benefit Authority – Proviso 108.15, PEBA: Suspension of Fiduciary Audit |
| Veto 8 | Part 1B, Page 441-447, Section 109, Department of Revenue – Proviso 109.10, DOR: Educational Credit for Exceptional Needs Children |
| Veto 9 | Part 1B, Page 488, Section 117, General Provisions – Proviso 117.117, GP: First Steps Reauthorization |
| Veto 10 | Part 1B, Page 492, Section 117, General Provisions – Proviso 117.125, GP: Pittman-Robertson Funds State Match |

Veto 11         Part 1B, Page 492, Section 117, General Provisions – Proviso 117.126, GP: North American Wetlands Conservation Act State Match

Each of these provisos has been codified or otherwise addressed by legislation and is no longer necessary.

## Earmarks and Pork

Veto 12         Part 1A, Page 9, Section 1, Department of Education, VIII. Education Improvement Act, F. Partnerships, Quaver Music, Total Funds $100,000

Veto 13         Part 1B, Page 511, Section 118, Statewide Revenue – Proviso 118.15(B), SR: Nonrecurring Revenue, Item 7(b), Department of Archives and History, Charleston Library Society Beaux Arts Building: $250,000

Veto 14         Part 1B, Page 511, Section 118, Statewide Revenue – Proviso 118.15(B), SR: Nonrecurring Revenue, Item 8, Arts Commission, SC Children's Theatre: $500,000

These lines would direct public funds to private entities perfectly capable of raising further dollars without taking them from taxpayers. While their missions may be valuable, South Carolina has well-identified needs which should take precedence.

Veto 15         Part 1A, Page 103, Section 38, Department of Social Services, I. State Office, E. Program Management, 1. Children's Services, Strengthening Families Program, Total Funds $700,000, General Funds $700,000

This is a pass-through which was not requested by the Department of Social Services. Funding for DSS would be better used to protect South Carolina's vulnerable children and adults.

Veto 16         Part 1B, Page 351, Section 34, Department of Health and Environmental Control – Proviso 34.51, DHEC: Greenwood Sewer Extension Line

Veto 17         Part 1B, Page 351, Section 34, Department of Health and Environmental Control – Proviso 34.54, DHEC: Alida Street Project

Veto 18         Part 1B, Page 370, Section 49, Department of Parks, Recreation and Tourism – Proviso 49.17, PRT: Horry County Museum

Last year, I vetoed these provisos because they revised the terms of earmarked money in past budgets from years ago. The General Assembly overrode these vetoes and yet, inexplicably, these same funds remain in the budget – again – with the associated dollars unspent. These provisos represent "zombie" earmarks that simply will not die. We owe it to the taxpayers of this state to see this money directed toward more meritorious uses without carrying it forward for yet another year.

**Veto 19**        Part 1B, Page 428-429, Section 100, Office of Adjutant General – Proviso 100.21, ADJ: 2017 Hurricane Irma and 2014 Ice Storm FEMA Match

Ensuring that state and local government entities are reimbursed for their FEMA Public Assistance Program expenditures during Hurricane Irma and the 2014 Ice Storm is of vital importance, and I included a proviso in my Executive Budget that would have ensured proper reimbursement. Unfortunately, the proviso included in this budget takes $500,000 in funds the state has set aside for disaster preparedness and gives it out to legislatively selected non-profits for the purpose of renovating homes damaged during the 2015 flood. Worse, there are no constraints to ensure the funds are only used for low-income families.

Additionally, this funding is duplicative because the South Carolina Disaster Recovery Office is already hard at work renovating homes damaged by the 2015 flood and has received $126 million in federal funds for this purpose.

**Veto 20**        Part 1B, Page 421, Section 93, Department of Administration – Proviso 93.28, DOA: OCAB Head Start Program

This line takes money from the Office of Executive Policy and Programs ("OEPP") and earmarks it for a bus purchase. OEPP administers many valuable initiatives, such as the Foster Care Review Board, the Division of Veterans' Affairs and Guardian Ad Litem programs. These funds are better served where they originated to carry out these programs.

### Transparency in Budgeting

**Veto 21**        Part 1B, Page 512, Section 118, Statewide Revenue – Proviso 118.15(B), SR: Nonrecurring Revenue, Item 26, Department of Juvenile Justice, Child Advocacy Centers: $170,000

**Veto 22**        Part 1A, Page 66, Section 26, Department of Archives & History, III. Historical Services, Historic Buildings Preservation, Total Funds $200,000, General Funds $200,000

**Veto 23**        Part 1B, Page 511, Section 118, Statewide Revenue – Proviso 118.15(B), SR: Nonrecurring Revenue, Item 7(e), Department of Archives and History, Historic Buildings Preservation: $500,000

**Veto 24**        Part 1B, Page 512, Section 118, Statewide Revenue – Proviso 118.15(B), SR: Nonrecurring Revenue, Item 14, Department of Agriculture, Statewide Agribusiness Infrastructure: $210,000

**Veto 25**        Part 1B, Page 512, Section 118, Statewide Revenue – Proviso 118.15(B), SR: Nonrecurring Revenue, Item 17(e), Department of Commerce, Economic Development Hubs and Community Development Infrastructure: $1,300,000

Veto 26    Part 1A, Page 134, Section 49, Department of Parks, Recreation & Tourism, II. Programs and Services, A. Tourism, Sales & Marketing, Sports Marketing Grant Program, Total Funds $4,500,000, General Funds $4,500,000

These lines represent a collection of legislative earmarked appropriations void of necessary transparency. They lack disclosure of explanation, justification, description, purpose, location or amount. How they further the agency missions is entirely unaddressed, and in most cases my Cabinet agency directors did not request the funds and do not know who inserted the lines in the state budget or how they are intended to be used. These items should be publicly disclosed and debated through the normal appropriations process and allowed to stand on their own merits, not rolled up into one line and sheltered from scrutiny. A vote to sustain these vetoes is a vote for transparency.

## Responsible Use of Taxpayer Dollars

Veto 27    Part 1B, Page 512, Section 118, Statewide Revenue – Proviso 118.15(B), SR: Nonrecurring Revenue, Item 17(d), Department of Commerce, Locate SC: $4,000,000

LocateSC is a critical resource for companies looking to come to South Carolina. New business is the central driver of our economic prosperity, and I support every facet of our recruitment and retention apparatus. In its budget request, the Department of Commerce asked for an appropriation of $4 million for LocateSC to satisfy current needs for this valuable mission.

However, this state budget contains a total of $11 million in new funds for LocateSC – **an additional $7 million that they did not request**. I am vetoing this proviso containing excess funding because LocateSC has already received $6 million from the Capital Reserve Fund and another $1 million from another section of this budget which I have not vetoed.

Veto 28    Part 1B, Page 271, Section 1, Department of Education – Proviso 1.52, SDE: Lee County Bus Shop

For as long as anyone can remember, the General Assembly has included this proviso in the state budget and the governor has vetoed it. Yet, there has not been one shred of proof offered that the Superintendent of Education intends to close the Lee County Bus Shop. I ask that you consider this fact and sustain this veto.

Veto 29    Part 1A, Page 143, Section 53, S.C. Conservation Bank, I. Administration, New Position Attorney III, Total Funds $70,000 1 FTE, General Funds $70,000 1 FTE

Veto 30    Part 1A, Page 143, Section 53, S.C. Conservation Bank, I. Administration, New Position Program Manager I, Total Funds $65,000 1 FTE, General Funds $65,000 1 FTE

**Veto 31**     Part 1A, Page 143, Section 53, S.C. Conservation Bank, I. Administration, Other Operating Expenses, Total Funds $85,335, General Funds $85,335

Last year, I vetoed a proposal to shutter the state Conservation Bank. I remain committed to my belief that this organization serves a valuable purpose, protecting the natural resources that keep us competitive and contribute mightily to a thriving, $20 billion tourism industry. However, my support for the Bank does not extend indefinitely. Despite shrinking the amount of grants that the agency issues by more than half, this budget grows the operational and staffing budget by almost 100%. The Conservation Bank does not need these funds to effectively accomplish its mission.

**Veto 32**     Part 1B, Page 512, Section 118, Statewide Revenue – Proviso 118.15(B), SR: Nonrecurring Revenue, Item 16(d), Department of Parks, Recreation and Tourism, Murrells Inlet Channel Clearing: $300,000

The dredging and clearing of our State's navigable waterways is well outside the mission and capability of the Department of Parks, Recreation and Tourism. It constitutes a mandate of mission creep.

## Higher Education

**Veto 33**     Part 1B, Page 511, Section 118, Statewide Revenue – Proviso 118.15(B), SR: Nonrecurring Revenue, Item 4(a), Francis Marion University, Medical and Health Education Classroom Complex: $5,000,000

**Veto 34**     Part 1B, Page 511, Section 118, Statewide Revenue – Proviso 118.15(B), SR: Nonrecurring Revenue, Item 4(b), Francis Marion University, Honors College: $2,100,000

This year, the Capital Reserve Fund allocated $49.7 million for capital projects to the state's universities on an equitable and pro-rata basis. This funding represents special treatment above and beyond what was afforded to any other higher education institution.

**Veto 35**     Part 1B, Page 453, Section 117, General Provisions – Proviso 117.8(B), GP: State Institutions – Revenues & Income, Subsection (B)

As I stated above, removing higher education institutions from the transparency provided through the normal appropriations process, in which every other state agency participates, sends the wrong message to the people of this state who, in truth, are the owners of our public colleges and universities.

## Good Government

**Veto 36**   Part 1B, Page 362-363, Section 38, Department of Social Services – Proviso 38.30, DSS: Foster Care Child Placements

The Department of Social Services works every day to reunite children with their families, in accordance with federal and state public child welfare laws which prioritize keeping families intact. The South Carolina Children's Code directs the Department "to make reasonable efforts to preserve or reunify a family," and DSS currently exceeds national standards for reunification of children within 12 months.

This proviso seeks to undo codified child welfare law to provide foster parents with preference for adoption when a child resides with them for nine months. This is contrary to federal requirements that South Carolina is required to meet, as well as state law which champions reunification with parents as a first priority. Utilizing an arbitrary timeframe to place foster parents above biological parents and relatives of a child would create unnecessary and dramatic competition.

This line also imposes a substantial policy mandate on the Department of Social Services. The state budget is not the place to make such determinations. If changes are made, they should be informed, and should occur only after robust debate with expert guidance.

**Veto 37**   Part 1B, Page 394, Section 65, Department of Corrections – Proviso 65.29, CORR: CBD Pilot Program

Arguments for the effectiveness of cannabinoids in treating chronic illness and traumatic injury are compelling. However, a program to test CBD on prisoners goes well beyond the scope of the Department of Corrections' rehabilitative mission, and is better suited for an agency or institution with a research-oriented mission.

**Veto 38**   Part 1B, Page 499-501, Section 117, General Provisions – Proviso 117.156, GP: South Carolina Industry, Workforce and Education Data Warehouse

Establishing a statewide longitudinal data system for our workforce development needs is a meritorious idea – South Carolina's workforce requirements are urgent and ongoing, and I thank the General Assembly for endeavoring to resolve the problem.

However, the structure and execution contemplated in this proviso for the establishment of this data warehouse is flawed. Under this provision state agencies would be required to turn over the personal information of South Carolina citizens for any reason or no reason at all. This proviso provides no official oversight for the decisions made by the data warehouse committee, no requirement that citizens consent to their personal information being released and quite frankly no one to say "no" or "pull the plug" before it's too late.

I encourage the General Assembly to go back to the drawing board with this proposal to ensure that sufficient controls are in place to protect the privacy of our citizens.

**Veto 39**      Part 1B, Page 310, Section 1A, Department of Education-EIA – Proviso 1A.87, SDE-EIA: McCormick County Schools

This proviso directs $418,000 in non-recurring funds from John de la Howe School for McCormick County Schools. New leadership is now in place at John de la Howe, and no students are transferring to McCormick. This funding needs to remain at John de la Howe so that the new leadership can carry out its mission to improve the school.

**Veto 40**      Part 1B, Page 420, Section 93, Department of Administration – Proviso 93.24, DOA: Emerging Leaders Program

The Emerging Leaders program focuses on attracting recent college graduates into careers within state government. While this is a worthy endeavor, state agencies have been reluctant to hire additional staff necessary to ensure the effective administration of this program. The Department of Administration has requested that this proviso be deleted in order to give them the flexibility necessary to shift focus toward creating leader pools from existing state employees with less than five years of experience. This approach will save resources, increase effectiveness and better create the next generation of talent in state government.

**Veto 41**      Part 1B, Page 352, Section 34, Department of Health and Environmental Control – Proviso 34.56, DHEC: Hazardous Waste Fund County Account

This proviso, which I also vetoed last year, bypasses local control over Hazardous Waste Contingency Fund dollars, allowing individual legislators to use them for their own means and ends. It also broadens the definition of infrastructure to include almost any activity relevant to a project with any economic impact with no transparency or oversight. This is a dangerous abdication of accountability and invites abuse. I am vetoing this proviso – again.

### Preventing Taxpayers from Subsidizing Planned Parenthood

**Veto 42**      Part 1A, Page 76, Section 33, Department of Health & Human Services, II. Program and Services, A. Health Services, 3. Medical Assistance Payments, Family Planning, Total Funds $15,779,259, General Funds $2,208,596

Taxpayer dollars must not directly or indirectly subsidize abortion providers like Planned Parenthood. There are a variety of agencies, clinics, and medical entities in South Carolina that receive taxpayer funding to offer important women's health and family planning services without performing abortions.

That's why last year I directed state agencies to stop providing state or local funds to abortion clinics. I also directed the Department of Health and Human Services to submit a waiver request to the federal government, making South Carolina one of only two states in the nation (along with Texas) to take this action. Until the waiver is acted upon by the federal government, I will veto this section of the SCDHHS budget to prevent taxpayer dollars from directly or indirectly subsidizing abortion providers like Planned Parenthood.

8

For the foregoing reasons, I am vetoing and returning without my approval the above provisions in R293, H.4950, the FY 2018-19 General Appropriations Act.

Yours very truly,

*Henry McMaster* (signature)

Henry McMaster

# ATTACHMENT 2

# State of South Carolina
## Executive Department



FILED
JUL 13 2018
*Mark Hammond*
SECRETARY OF STATE

## Office of the Governor

### EXECUTIVE ORDER NO. 2018-21

**WHEREAS,** the preservation of life is the ultimate right to be protected and necessarily includes the life of unborn children; and

**WHEREAS,** the State of South Carolina has a strong culture and longstanding tradition of protecting and defending the life and liberty of unborn children; and

**WHEREAS,** the State also recognizes that the availability of women's health and family planning services is important in providing for healthy families and children; and

**WHEREAS,** the South Carolina Department of Health and Human Services ("DHHS") expends taxpayer dollars to pay for health care services, including family planning services; and

**WHEREAS,** the General Assembly has expressed, in section 43-5-1185 of the South Carolina Code of Laws, as amended, that "State funds appropriated for family planning must not be used to pay for an abortion"; and

**WHEREAS,** the payment of taxpayer funds to abortion clinics, for any purpose, results in the subsidy of abortion and the denial of the right to life; and

**WHEREAS,** abortion clinics' primary focus on denying the right to life is contrary to and conflicts with the State's obligation to protect and preserve that right; and

**WHEREAS,** on August 24, 2017, the undersigned issued Executive Order 2017-15 directing DHHS to pursue all available methods and to take all necessary actions to exclude abortion clinics from receiving taxpayer funds for any purpose, including but not limited to seeking any and all requisite waivers from the Centers for Medicare and Medicaid Services ("CMS"); and

**WHEREAS,** DHHS subsequently submitted and is negotiating with CMS regarding such a mandatory waiver; and

WHEREAS, on July 5, 2018, because CMS had not yet approved the requisite mandatory waiver, the undersigned issued Veto No. 42, which nullified the Family Planning appropriation in DHHS's budget; and

WHEREAS, although the State should not contract with abortion clinics for family planning services, the State also should not deny South Carolinians access to necessary medical care and important women's health and family planning services, which are provided by a variety of other non-governmental entities and governmental agencies; and

WHEREAS, Proviso 33.16 of the Fiscal Year 2018–19 General Appropriations Act grants DHHS broad authority to carry forward and expend funds for the purpose of operating the Medicaid program, to include family planning services.

NOW, THEREFORE, by virtue of the authority vested in me as Governor of the State of South Carolina and pursuant to the Constitution and Laws of this State and the powers conferred upon me therein, I hereby direct DHHS to exercise the authority granted in Proviso 33.16 of the Fiscal Year 2018–19 General Appropriations Act to expend such appropriated and carry-forward funds as necessary to continue the Family Planning program.

FURTHER, I hereby direct DHHS to deem abortion clinics, as defined by section 44-41-75 of the South Carolina Code of Laws, as amended, and any affiliated physicians or professional medical practices, as identified and defined by Executive Order 2017-15, that are enrolled in the Medicaid program as unqualified to provide family planning services and, therefore, to immediately terminate them upon due notice and deny any future such provider enrollment applications for the same.

This Order is effective immediately.

GIVEN UNDER MY HAND AND THE GREAT SEAL OF THE STATE OF SOUTH CAROLINA, THIS 13th DAY OF JULY, 2018.

HENRY MCMASTER
Governor

ATTEST:

MARK HAMMOND
Secretary of State

# ATTACHMENT 3



**Healthy Connections** MEDICAID

Henry McMaster GOVERNOR
Joshua D. Baker DIRECTOR
P.O. Box 8206 • Columbia, SC 29202
www.scdhhs.gov

July 13, 2018

Planned Parenthood South Atlantic
2712 Middleburg Drive, Suite 107
Columbia, SC 29204-2478

Re: Pharmacy MEDICAID ID#: 715572
NPI# 1497049555
Physician Group MEDICAID ID#: 143724
NPI# 1851438147

Dear Planned Parenthood South Atlantic:

On Friday, July 13, 2018, Governor Henry McMaster issued Executive Order 2018-21 directing the South Carolina Department of Health and Human Services to deem abortion clinics unqualified to provide family planning services to beneficiaries in the South Carolina Medicaid Program. On July 5, 2018, Governor McMaster issued his vetoes to the FY 2018-2019 General Appropriations Act, among which was Veto 42, which prevents taxpayers from subsidizing abortion providers, including Planned Parenthood. Previously, Executive Order 2017-15 requires the South Carolina Department of Health and Human Services to take all necessary actions to cease payment of funds to any physician or professional medical practice affiliated with an abortion clinic.

The Governor's actions result in Planned Parenthood no longer being qualified to provide services to Medicaid beneficiaries; therefore, Planned Parenthood's enrollment agreements with the South Carolina Medicaid Program is terminated effective July 13, 2018.

Sincerely,

Amanda Q. Williams
Office of Health Programs

South Carolina Department of Health and Human Services   Better care. Better value. Better health.